United States Court of Appeals
Fifth Circuit

**F I L E D**

April 29, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-51119
_____

ENCORE VIDEOS, INC.,

Plaintiff - Appellant,

versus

CITY OF SAN ANTONIO,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before SMITH and EMILIO M. GARZA, Circuit Judges, and CUMMINGS,* District Judge.

PER CURIAM:

Encore Videos's petition for panel rehearing is DENIED. The City's petition for rehearing

en banc is construed as a petition for panel rehearing pursuant to the 5TH CIR. IOP to FED. R. APP.

P. 35, and is also DENIED. The opinion of the court issued on October 29, 2002, 310 F.3d 812, is

withdrawn, and the following is substituted:

I.

_____

*District Judge of the Northern District of Texas, sitting by designation.

Appellant Encore Videos, Inc. ("Encore Videos"), operates a sexually oriented retail video store in San Antonio, Texas. In April 1995, the city council enacted Ordinance #82135, which forbids sexually oriented businesses from locating within 1000 feet of residential areas. Encore Videos' store is within 1000 feet of a residential area, although separated by the Loop 410 highway. Encore Videos provides only sales for off-premises viewing; customers cannot view the videos at the store.

In September 1997, Encore Videos sued, challenging the ordinance on First Amendment grounds. In response, the city amended and reenacted the ordinance to impose procedural safeguards required by *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). The new law, Ordinance #87443, took effect in March 1998. Encore Videos filed an amended complaint challenging the new ordinance on federal and Texas state constitutional grounds.

The district court granted the city's motion for summary judgment and denied Encore Videos'. *Encore Video* [sic]*, Inc. v. City of San Antonio*, No. Civ. A. SA-97-CA1139FB, 2000 WL 33348240 (W.D. Tex. Oct. 2, 2000). Encore Videos appeals, arguing that the ordinance offends the First Amendment and the state Constitution. We reverse and remand.

II.

A.

Before addressing the merits of the First Amendment claim, we must determine whether the ordinance should be analyzed as a prior restraintSSas advocated by Encore VideosSSor as a time, place, and manner regulation. As a general rule, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority," is a presumptively unconstitutional "prior restraint." *Shuttlesworth v. City*

*of Birmingham*, 394 U.S. 147, 150-51 (1969). Zoning regulations restricting the location of adult entertainment businesses are considered time, place, and manner regulations, however, if they do not ban such businesses throughout the whole of a jurisdiction and are "designed to combat the undesirable secondary effects of such businesses" rather than to restrict the content of their speech *per se*.[1] Relevant harmful secondary effects of adult businesses include crime, reduction of economic activity, and lowered property values. *Lakeland Lounge*, 973 F.2d at 1257.

There is no evidence of improper censorial motives on the part of the city council. Where "nothing in the record . . . suggests impermissible motives on the part" of the enacting legislature, a local government seeking to use the secondary effects justification need show only that "(1) the drafters of the ordinance did rely upon studies of secondary effects," and (2) a "majority" of the city council members received "some information about the secondary effects." *Lakeland Lounge*, 973 F.2d at 1259.

In an opinion rejecting a First Amendment challenge to Ordinance #82135, the predecessor to Ordinance #87443, we held that the city "relied on studies provided by the City Council relating to secondary effects." *NATCO, Inc. v. City of San Antonio*, No. 98-50645, slip op. at 6 (5th Cir. June 2, 1999) (unpublished). In this circuit, unpublished opinions issued on or after January 1, 1996, generally are not binding precedent, although parties may cite them, and they have "persuasive value." 5TH CIR. R. 47.5.4. *NATCO*'s factual findings on the exact point at issue surely carry "persuasive" weight. *Id.* They also have been endorsed by the district court *a quo*. In any event, there is no reason to go against the factual findings of *NATCO* on this point, and we follow them here.

---

[1]*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986); *see also Lakeland Lounge, Inc. v. City of Jackson*, 973 F.2d 1255, 1257-58 (5th Cir. 1992) (same).

Even a content-neutral regulation may be considered a prior restraint if it gives government officials "unbridled discretion" to restrict protected speech.[2] But Ordinance #87443 does not fall into this category, because the Director of Building Inspections may deny a sexually oriented business's permit application only if the applicant seeks to utilize a location within 1000 feet of a residential neighborhood, another sexually oriented business, or several other precisely specified types of properties. San Antonio Ordinance #87443 § 2(a)-(f).

## B.

### 1.

To pass constitutional muster, a time, place, and manner regulation must be "content-neutral, . . . narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Frisby v. Schultz*, 487 U.S. 474, 481 (1988) (internal citations omitted). In *City of Renton*, 475 U.S. at 47, the Court stated that "time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." The Court went on to say that "the Renton ordinance is 'narrowly tailored' to affect only that category of theaters shown to produce the unwanted secondary effects, thus avoiding the flaw that proved fatal to the regulations in [certain prior First Amendment cases]." *Id.* at 52. The Court thereby suggested that narrow tailoring is the test in this context.

Later Supreme Court decisions on time, place, and manner regulations have continued to

---

[2] *See, e.g.*, *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1992) (invalidating regulation that "plac[es] unbridled discretion in the hands of a government official or agency"); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) (same).

apply the narrow tailoring standard.[3]  A leading post-*City of Renton* secondary effects decision of this court also applied it.  *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1273 (5th Cir. 1988).[4]  We therefore conclude that the requirement of narrow tailoring remains in force.

Encore Videos argues that the San Antonio ordinance fails to meet the first three of the four requirements of the time, place, and manner test.  We address each in turn.

2.

The first requirement is content neutrality.  "'The principal inquiry in determining content neutrality, in speech cases generally and in time, place, and manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'"  *Hill* v. *Colorado*, 530 U.S. 703, 719 (2000) (quoting *Ward*, 491 U.S. at 791).  Although Encore Videos claims that Ordinance #87443 is "content-based," it provides no evidence to support that assertion.

The inquiry here is similar to that applied to the question of secondary effects motivation, described in part II.A, *supra*.  It is not certain, however, whether the two tests require the same degree of proof of improper motive before a regulation fails them.  Even so, an ordinance for which

---

[3] *See, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989); *Frisby*, 487 U.S. at 481; *cf. Int'l Eateries of Am., Inc. v. Broward County, Fla.*, 941 F.2d 1157, 1162 (11th Cir. 1991) (advancing several reasons why narrow tailoring requirement survives *City of Renton*).

[4] The more recent *Lakeland Lounge* decision, which also dealt with First Amendment challenges to a "secondary effects" ordinance, did not mention the narrow tailoring requirement, but neither did it explicitly repudiate it.  *See Lakeland Lounge*, 973 F.2d at 1257 (holding that zoning ordinance restricting the location of adult businesses must be content-neutral, "'designed to serve a substantial governmental interest' and may 'not unreasonably limit alternative avenues of communication'") (quoting *City of Renton*, 475 U.S. at 47).  Because *Lakeland Lounge* did not state that the standards it imposed were the *only* ones required, it is not directly inconsistent with SDJ or with post-*City of Renton* Supreme Court opinions applying the time, place, and manner test.

the record discloses *zero* proof of improper motive surely passes both tests.

3.

We next consider the requirement that the ordinance serve a substantial government interest. "A city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *City of Renton*, 475 U.S. at 50 (quoting *Young v. Am. Mini-Theatres*, 427 U.S. 50, 71 (1976) (plurality opinion)). "Local governments . . . can restrict adult businesses in order to control the bad 'secondary effects'SSsuch as crime, deterioration of their retail trade, and a decrease in property valuesSSthat the establishments bring." *Lakeland Lounge*, 973 F.2d at 1257. There is, therefore, no doubt that the secondary effects the San Antonio ordinance seeks to remedy are important enough to be considered a substantial government interest under the time, place, and manner test.

We have interpreted the substantial government interest standard as requiring not only a showing of the *importance* of the interest, but also a demonstration that the challenged statute, at least to some degree, is *effective* in serving that interest.[5] This approach arguably conflicts with *City of Renton*, which mandates only that a statute be "*designed* to serve a substantial government interest" and does not require evidence of effectiveness. *City of Renton*, 475 U.S. at 47 (emphasis added). *City of Renton* does require proof of the *existence* of the secondary effects that the challenged ordinance seeks to eliminate but does not consider the question of proof of effectiveness

---

[5] *See J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 371 (5th Cir. 1998) (holding that "*Renton* teaches us that [to pass the substantial interest test] the government must produce *some* evidence of adverse secondary effects" that the ordinance works to eliminate); *see also Flanigan's Enter., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 985 (11th Cir. 2001) (holding that "to meet their burden" under the substantial interest prong, "the Defendants must have some factual basis for the claim" that adult entertainment activities restricted by the challenged statute "result . . . in undesirable community conditions") (internal citations omitted), *cert. denied*, 122 S. Ct. 2356 (2002).

in combating them.  *Id.* at 50-52.  This court's caselaw also may be in tension with other Supreme Court time, place, and manner cases that require evidence of effectiveness and necessity only as a part of the narrow tailoring prong of the time, place, and manner test.  *See, e.g.*, *Frisby*, 487 U.S. at 484-87.  Nonetheless, *J&B Entertainment* is binding on us unless overruled en banc.

Fortunately, this question has little practical significance for the present case.  Evidence of effectiveness too weak to survive scrutiny under *J&B Entertainment*'s version of the substantial interest standardSSwhich requires only that the "government must present sufficient evidence to demonstrate 'a link between the regulation and the asserted governmental interest' under a 'reasonable belief' standard"SSsurely will also fail to meet the requirements of the much more stringent narrow tailoring prong.  *See J&B Entertainment*, 152 F.3d at 372.  We therefore choose not to address any apparent inconsistency in the caselaw and, instead, will consider the relevance of the ordinance's effectiveness under the narrow tailoring prong.

4.

The ordinance's constitutionality under the time, place, and manner test therefore turns on the narrow tailoring prong.  It fails to meet this test and therefore is unconstitutional.

A time, place, and manner regulation meets the narrow tailoring standard if it "targets and eliminates no more than the exact source of the evil it seeks to remedy."  *Frisby*, 487 U.S. at 485.  Although government need not choose the "least intrusive means" to advance its legitimate interests, it "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."  *Ward*, 491 U.S. at 799.[6]

_____

[6] In *SDJ*, we said that "an ordinance is sufficiently well tailored if it effectively promotes the government's stated interest."  *SDJ*, 837 F.2d at 1276.  *SDJ*, however, predates the Supreme Court's articulation of the narrow tailoring requirement in *Ward* and *Frisby*.  *Ward*, 491 U.S. at 799; *Frisby*,

Ordinance #87443 prohibits sexually oriented businesses from being within 1000 feet of other sexually oriented businesses or residential areas, churches, schools, or parks. The ordinance defines "sexually oriented business" broadly. The regulation applies not only to establishments at which individuals can view sexually explicit materials on site, but also to establishments that do not permit on-site viewing (*i.e.,* businesses at which individuals can buy or rent sexually explicit materials for at-home viewing). In addition, the ordinance applies to *any* bookstore, novelty store, or video store that devotes over 20% of its inventory or floor space to sexually explicit materials.[7] San Antonio Ordinance #87443 § 1(2).

The city justifies this ordinance on the ground that it will reduce the adverse secondary effects (such as increased crime and the reduction of property values) of sexually oriented businesses. Therefore, in order to demonstrate that the ordinance is narrowly tailored, the city must show that the ordinance addresses these problems.

To establish that Ordinance #87443 passes the narrow tailoring test, the city relies on three

487 U.S. at 485. Although *Ward* and *Frisby* did not involve statutes regulating sexually oriented expression, we join our sister circuits in applying this more recent test in cases involving sexually oriented businesses. *See, e.g.*, *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1002 (7th Cir. 2002) (holding that restrictions on adult businesses "are narrowly tailored if they advance a substantial interest . . . and the restrictions do not 'burden substantially more speech than is necessary' for such for such advancement" (quoting *Ward*, 491 U.S. at 799)); *Lady J Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1365 (11th Cir. 1999) (holding that "narrow tailoring . . . prohibits regulations [of adult businesses] that are 'substantially broader than necessary'" (quoting *Ward*, 491 U.S. at 800); *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1221 (8th Cir. 1997) (adopting *Ward* test in an adult business case); *Phillips v. Borough of Keyport*, 107 F.3d 164, 174 (3d Cir. 1997) (holding that narrow tailoring in an adult business case requires that "'government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals'" (quoting *Ward*, 491 U.S. at 799)).

[7] Thus, the ordinance might apply to many garden-variety book or music stores with restricted adult sections.

studies of the secondary effects of adult businesses, all conducted in other cities: one in Seattle, Washington, in 1989, another in Austin, Texas, in 1986, and the third in Garden Grove, California, in 1991. The city is "entitled to rely on the experiences . . . of other cities . . . so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *City of Renton*, 475 U.S. at 51-52; *see City of Los Angeles v. Alameda Books, Inc.*, 525 U.S. 435, 438 (2002) (confirming that "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest" (quoting *City of Renton*, 475 U.S. at 51-52)).

However, these studies do not support the city's extensive regulation of sexually oriented businesses. The studies either entirely exclude establishments that provide only take-home videos and books (as is the case with the Seattle study)[8] or include them but do not differentiate the data collected from such businesses from evidence collected from enterprises that provide on-site adult entertainmentSSas may have been the case with the Austin and Garden Grove studies.[9] Off-site businesses differ from on-site ones, because it is only reasonable to assume that the former are less likely to create harmful secondary effects. If consumers of pornography cannot view the materials at the sexually oriented establishment, they are less likely to linger in the area and engage in public alcohol consumption and other undesirable activities. *See World Wide Video, Inc. v. City of Tukwila*,

---

[8] The Seattle study was limited to cabarets that provide live adult entertainment.

[9] Based on the evidence in the record, it is difficult to tell whether the Austin and Garden Grove studies excluded off-site entertainment businesses entirely or lumped them in with the rest. The Austin study covered two "adult book stores" and one "adult film store" among the six adult businesses studied, but failed to indicate whether these three businesses provide any on-site entertainment. The Garden Grove study focused on a total of seven adult businesses but neglected to indicate whether any of them provided exclusively off-site entertainment.

816 P.2d 18, 21 (Wash. 1991) ("[The city] has not shown that adult businesses with predominantly 'take-home' merchandise (which clearly are covered by the ordinance) have the same harmful secondary effects traditionally associated with adult movie theaters and peep shows . . . ."). *But see Z.J. Gifts, L.L.C. v. City of Aurora*, 136 F.3d 683, 687 (10th Cir. 1998) (holding, without explaining why, that the on-site/off-site distinction is immaterial, because "the record fully supports the city's regulation of sexually oriented businesses providing both on- and off-site viewing of sexually explicit materials"); *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1418 (8th Cir. 1994) (rejecting the distinction because "that simply is not the law," without giving more than a cursory explanation why).

Given the expansive reach of the ordinance in the instant case, we must require at least some substantial evidence of the secondary effects of establishments that sell adult products solely for off-site consumption. *See Alameda Books*, 525 U.S. at 438 ("The municipality's evidence must fairly support the municipality's rationale for its ordinance."). Otherwise, even ordinary bookstores and video stores with adult sections could be subjected to regulation that restricts their First Amendment rights without evidence that they cause "secondary effects."

In order to meet the narrow tailoring requirement, the city was required to provide at least some substantial evidence of secondary effects specific to adult businesses that sell books or videos solely for off-site entertainment. *See Ward*, 491 U.S. at 799 (holding that government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals"). Because there is no such evidence in the record, we must strike down the zoning provision of Ordinance #87443.[10]

_____

[10] The Supreme Court's decision in *Alameda Books* is not to the contrary. In *Alameda Books*, the Court held that the evidence presented by Los Angeles to support its regulation of sexually oriented businesses was sufficient to survive summary judgment. The challenged provision in that

III.

A.

Under *FW/PBS*, 493 U.S. at 227-28, a content-neutral "licensing scheme" for expression that "does not present the grave 'dangers of a censorship system'" must have two "essential" procedural "safeguards": "[T]he licensor must make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained, and there must be the possibility of prompt judicial review in the event that the license is erroneously denied."[11] Like the present case, *FW/PBS* involved a zoning and licensing ordinance for adult businesses. *Id.* at 220-21. Encore Videos claims that Ordinance #87443 violates both of the procedural requirements imposed by *FW/PBS*. Even though we decide in favor of Encore Videos on its challenge to the ordinance's zoning requirement, we must address the *FW/PBS* procedural issue, because Encore Videos will remain subject to Ordinance #87443's procedural requirements even if one of the substantive

---

case prohibited "'the establishment or maintenance of more than one adult entertainment business in the same building, structure or portion thereof.'" 525 U.S. at 429 (quoting LOS ANGELES, CAL., MUNICIPAL CODE § 12.70(C) (1983)). Los Angeles presented more compelling evidence to justify that provision than does the city in the instant case. Specifically, Los Angeles presented its own 1977 study that "concluded that concentrations of adult businesses are associated with higher rates of prostitution, robbery, assaults, and thefts in surrounding communities." *Id.* at 430. Clearly, that study, unlike the studies presented in this case, directly supported the specific regulation at issue in *Alameda Books*.

[11] Although the portion of Justice O'Connor's opinion for the Court laying out these standards won the support of only three Justices, three others endorsed a concurring opinion by Justice Brennan that argued for even stronger procedural protections. *FW/PBS*, 493 U.S. at 238-42 (Brennan, J., concurring). "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Thus, Justice O'Connor's opinion can be considered binding precedent.

elements is held to be unconstitutional.[12]

B.

We reject Encore Videos' argument that Ordinance #87443 violates *FW/PBS*'s requirement that "the licensor must make the decision whether to issue the license within a specified and reasonable time." *FW/PBS*, 493 U.S. at 228. The ordinance requires the Director of Building Inspections to "issue or deny a certificate of occupancy to a sexually oriented business not more than thirty (30) business days subsequent to the date of the application's submission of an application therefor." San Antonio Ordinance #87443 § 2(f)(4). A license may not be approved until a series of inspections have been performed, and there is no time limit for the completion of the inspections.[13]

At first glance, the city's licensing system seems analogous to that which the Supreme Court found unconstitutional in *FW/PBS*. The ordinance challenged in that case also had a thirty-day deadline, combined with a system of required inspections for which there was no separate time limit. The ordinance was struck down because it "provide[d] no means by which an applicant may ensure that the business is inspected within the 30 day time period." *FW/PBS*, 493 U.S. at 227.

The city and the district court here distinguish *FW/PBS*, however, on the ground that the

---

[12] The relevance of *FW/PBS* is not affected by *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002), which held that the procedural requirements of *Freedman v. Maryland*, 380 U.S. 51 (1965), elaborated in *FW/PBS*, do not apply to "a licensing scheme . . . [that] is not subject-matter censorship but content-neutral time, place, and manner regulation of the use of a public forum." The present case does not concern "regulation of the use of a public forum." *Id.* Like *FW/PBS* and unlike *Thomas*SSwhich addressed a demonstration permit system for public parksSSthis case addresses a licensing scheme for adult businesses. *Thomas* did not overrule *FW/PBS* or even hint that its scope has been narrowed.

[13] *See* San Antonio Uniform Building Code § 109.3 (requiring that a "certificate of occupancy" be issued only "[a]fter the building official inspects the building or structure and finds no violation of the provisions of this code or other laws which are enforced by the code enforcement agency").

-12-

permit system in question here assigns the task of inspection to the same official who is required to issue or deny a license within thirty days.[14] The Director of Building Inspections therefore is able to control the inspection process and ensure that it is completed within the thirty-day period. By contrast, the system invalidated in *FW/PBS* assigned the task of inspection to three separate agencies, none of which was under the control of the chief of police, the official tasked with enforcing the thirty-day deadline for issuing a permit. *Id.*

This is a matter of first impression and is a close call.[15] Nonetheless, based on the record before us, we conclude that Ordinance #87443 does not violate the promptness requirement of *FW/PBS*. It is certainly plausible to argue that the director's deadline for issuing a permit also constrains his discretion with respect to the scheduling of inspections. Likewise, placing the responsibility for both meeting the thirty-day deadline and carrying out the inspections in the hands of the same official makes it more likely that the deadline will be met than was the case under the system of divided responsibility reviewed in *FW/PBS*.

Because there is no evidence in the record suggesting that the Director of Building Inspections

---

[14] *Encore Video*, 2000 WL 33348240, at \*5-\*6; *see also City News & Novelty, Inc. v. City of Waukesha*, 604 N.W.2d 870, 880 (Wis. Ct. App. 1999) (endorsing a similar argument), *cert. granted*, 530 U.S. 1242 (2000), *cert. dismissed*, 531 U.S. 278 (2001).

[15] This court did once briefly consider the question. In *Crystal Cinema v. City of Lubbock*, No. 97-10597 (5th Cir. July 16, 1998) (unpublished), we held that the city's permit system for adult businesses was constitutional despite the fact that it failed to create a separate deadline for the completion of required inspections. The general forty-five-day deadline for consideration of applications was deemed sufficient, even though not all the agencies involved were under the authority of the City Secretary, the official responsible for issuing permits and denials within the specified time.

As an unpublished opinion, *Crystal Cinema* is not binding precedent. 5TH CIR. R. 47.5.4. Moreover, it fails even to consider the relevance of *FW/PBS* to this issue.

either cannot or will not be able to process adult business permit applications within the thirty-day limit, we reject Encore Videos' argument on this point. This determination, however, does not necessarily extend to other cases in which the record might reveal evidence of delays in excess of the statutory deadline.

C.

The circuits are split on the question whether *FW/PBS*'s requirement of "prompt judicial review in the event that the license is erroneously denied" requires merely prompt *access* to judicial review or a prompt judicial *decision.* *FW/PBS*, 493 U.S. at 228. Five circuits, including this one, have held that prompt access is sufficient. *TK's Video, Inc. v. Denton County*, 24 F.3d 705, 709 (5th Cir. 1994).[16] Three others have adopted the more stringent requirement of a prompt final decision.[17] Ordinance #87443 requires prompt access to judicial review but does not provide a time limit for a decision.[18]

The Supreme Court recently passed up an opportunity to resolve this split.[19] We therefore follow our own precedent and decide in favor of the city on this question. *See TK's Video*, 24 F.3d at 709.

---

[16] *See Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251, 1256 (11th Cir. 1999); *Beal v. Stern*, 184 F.3d 117, 129 (2d Cir. 1999); *Graff v. City of Chicago*, 9 F.3d 1309, 1324-25 (7th Cir. 1993) (en banc); *Jews for Jesus v. Mass. Bay Transp. Auth.*, 984 F.2d 1319, 1327 (1st Cir. 1993).

[17] *See Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 892 (6th Cir. 2000); *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1101-02 (9th Cir. 1998); *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 998-1000 (4th Cir. 1995) (en banc).

[18] *See* San Antonio Ordinance #87443 § 2(f)(7) (providing for immediate access to judicial review but not imposing a time limit for decision).

[19] *See Thomas*, 534 U.S. at 325 (noting that the Court does not reach the issue despite the fact that it was one of the questions on which writ of certiorari had been granted)

The judgment is REVERSED and REMANDED for appropriate further proceedings in accordance with this opinion.[20]

---

[20] Because we strike down the locational restriction of Ordinance #87443 on First Amendment grounds, we need not address Encore Videos' argument that the ordinance violates the Texas constitution.