Charles Joseph KACZMAREK, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–97–137–CR

Court of Appeals of Texas,
Waco.

Jan. 6, 1999.

Tom Zakes, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Keli Pool Roper, Asst. Dist. Atty., Houston, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice MALONEY (sitting by assignment)[1].

1. On assignment by the Chief Justice of the Supreme Court.

## OPINION

FRANK MALONEY, Justice (Assigned).

On September 5, 1996, Appellant, Charles Joseph Kaczmarek, was charged by complaint and information with the misdemeanor offense of operating a sexually oriented business without a permit in violation of Houston Code of Ordinances Sections 28–121 to 28–135. Kaczmarek entered a plea of not guilty to the offense, and the case was tried before a jury. On February 25, 1997, the jury found Kaczmarek guilty as charged, and the court assessed his punishment at confinement in the Harris County Jail for ninety days, probated for one year and a $1,000.00 fine.

Kaczmarek raises seven points on appeal:

I. Houston Code of Ordinances Section 28–122 is unconstitutional in that it violates the First Amendment to the United States Constitution—granting the Houston Chief of Police unbridled administrative discretion;

II. Section 28–122 is unconstitutional in that it violates rights protected by Article I, Section 8, and

III. Article I, Section 6 of the Texas Constitution;

IV. Section 28–122 is unconstitutionally vague;

V. The trial court erred in denying Appellant's motion to quash the charging information because it did not give adequate notice of the charges against him;

VI. The trial court erred in denying Appellant's motion to suppress evidence obtained following an unlawful warrantless arrest; and

VII. The trial court erred in admitting certain photographs into evidence over Appellant's objection that they were unduly prejudicial and such prejudice outweighed their probative value. We affirm.

### Procedural and Factual Background

On September 4, 1996, Charles Kaczmarek was employed as the manager of Le Bare, an adult lounge with male dancers, located in the City of Houston, Harris County, Texas. At approximately 8:00 p.m. on September 4, 1996, three City of Houston Police Department vice division officers entered the Le Bare night club. The officers were casually dressed in plainclothes and were not in uniform. After paying a cover charge, the officers remained at the club for approximately one and a half hours.

While at Le Bare, the officers observed several dancers on stage. The dancers' performances consisted of the dancers entering the stage costumed in different outfits and removing those outfits while dancing, to reveal a swimsuit sized g-string exposing the buttocks. The dancers perform on a main stage, but also provide "table dances," a dance performed off the main stage for a smaller group of customers for a larger tip. The dancers are not paid a salary, but rather perform for tips. Under City of Houston Ordinance Section 28–122(a), an adult cabaret such as La Bare requires acquisition of a Sexually Oriented Business permit in order to operate legally. La Bare has no such permit.

While in the club, the officers determined that Kaczmarek was the manager. After exiting the club, the officers notified an arrest team outside the club that illegal activity was occurring and described Kaczmarek as the manager. Five arresting officers entered the premises and, after speaking to Kaczmarek about the lack of a Sexually Oriented Business permit, placed him under arrest. During the course of the arrest, several photographs were taken of the dancers in their dancing attire. At trial, these photographs were admitted in evidence over Kaczmarek's objection. Based upon the evidence presented at trial, the jury found that Kaczmarek, as manager of La Bare, had operated an adult cabaret without a permit and found him guilty as charged.

### POINT I

**Whether Sections 28–121 to 28–135 of the Houston Code of Ordinances violate rights protected by the First Amendment to the United States Constitution.**

In his first point, Kaczmarek asserts that his conviction must be overturned because enforcement of Section 28–122 violates his

First Amendment freedom of expression. Both the State and appellant recognize that exotic dancing does receive some amount of First Amendment protection. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–33, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). We therefore begin by noting that in *Smith v. State,* 866 S.W.2d 760, 764 (Tex.App.—Houston [1st Dist.] 1993, writ denied), this very ordinance was held not to violate the protections of the First Amendment. In *Smith,* the First Court of Appeals observed that the United States Supreme Court had considered the constitutionality of a similar ordinance in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

In *Renton,* the Supreme Court found that zoning provisions which prohibited locating sexually oriented businesses near surrounding churches, residential areas, schools, and parks are acceptable, so long as they serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *City of Renton,* 475 U.S. at 47, 106 S.Ct. 925. The Supreme Court held that such an ordinance was to be treated as a content neutral, time, place, or manner restriction. *Id.* In so holding, the Court concluded that the purpose of such a regulation was not to prevent the message of speech, but was to prevent the secondary effects caused by these businesses on the surrounding community. *Id.* Therefore, such an ordinance is not "content based." *Id.*

In *Smith,* addressing the *City of Renton* standard of review, the First Court affirmed the holding reached repeatedly by that court—that such ordinances serve a substantial governmental interest. *Smith,* 866 S.W.2d at 764 (citing *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 549 (Tex.App.—Houston [1st Dist.], 1988, writ denied)) (upholding Harris County regulations regarding the location of sexually oriented enterprises); *Rahmani v. State,* 748 S.W.2d 618, 622–23 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (upholding the city of Houston's ordinance regulating adult arcades); *Jolar Cinema of Houston v. City of Houston,* 695

S.W.2d 353, 355 (Tex.App.—Houston [1st Dist] 1985, no writ) (upholding an earlier version of the ordinance currently before this court). Further, *Smith* held that the ordinance left open ample alternative channels of communication. *Smith,* 866 S.W.2d at 764.

■ However, in *Smith,* the appellant did not raise the issue raised here, that is whether the ordinance gave the Houston Chief of Police unbridled administrative discretion. Kaczmarek urges that the ordinance grants "unbridled discretion" to grant or deny a permit, and that such a scheme, in effect, allows the City of Houston to place a prior restraint upon the expressive conduct found in the dancing. This argument is not convincing. The boundaries of unbridled administrative discretion are laid out in *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). In *Lakewood,* unbridled discretion was defined as the "existence of the licensor's unfettered discretion." *Lakewood,* 486 U.S. at 757, 108 S.Ct. 2138. The only way to prevent such discretion, *Lakewood* notes, is the presence of standards limiting discretion. *Id.* at 758, 108 S.Ct. 2138. The City of Houston Ordinance contains such standards. The Ordinance states that the Chief of Police *shall* grant the permit unless one of nine exacting conditions exists. Section 28–124(b), (1)-(9). *See also SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1277–78 (5th Cir. 1988) (holding that an earlier version of the ordinance did not provide the City of Houston's Chief of Police with unbridled discretion). One of the listed exceptions includes the enterprise being located within 750 feet of a school. *See* Section 28–124(b)(1). The ordinance provides a specific and detailed process of performing the measurement. *Id.* We hold that the use of the word "shall," combined with the detailed procedure for measuring distances, indicates that the Chief of Police does not, in fact, have unbridled discretion. We agree with the United States Court of Appeals for the Fifth Circuit's holding in *SDJ,* that the ordinance provides the Chief of Police with a "definitive, intelligible standard," that is not unbridled. *SDJ,* 837 F.2d at 1278. Kaczmarek's first point is overruled.

## POINT II

Whether Sections 28–121 to 28–135 of the Houston Code of Ordinances violate rights protected by Article I, Section 8 of the Texas Constitution.

■ In his second point, Kaczmarek argues that the provisions of Article I, Section 8 of the Texas Constitution provide greater protection of speech than the First Amendment to the United States Constitution. Therefore, Kaczmarek urges that the conviction should be reversed and the charges dropped. The Texas Supreme Court has held that the Texas Constitution does provide greater protection of freedom of speech than the First Amendment. *Ex parte Tucci*, 859 S.W.2d 1, 4 (Tex.1993). However, in *Lindsay*, the court held that the *Renton* standard applied to the Sexually Oriented Business ordinance under the Texas Constitution as well as the United States Constitution. *Lindsay*, 751 S.W.2d at 549. It has been argued, although not in this case, that *Tucci* (decided after *Lindsay*) impliedly overruled *Lindsay*. *Woodall v. City of El Paso*, 49 F.3d 1120, 1127 (5th Cir.1995). We are not persuaded by that argument. *Tucci* concerned political speech, the most protected form of speech. *See Tucci*, 859 S.W.2d at 3; *Young v. American Mini Theatres*, 427 U.S. 50, 61, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (noting the higher importance of political speech). No mention is made in *Tucci* regarding sexually oriented expression, nor of the *Lindsay* decision. In addition, the Fort Worth Court of Appeals has since held that the broader Texas free speech protections found in *Tucci* do not extend to exotic dancing. *See 2300 Inc. v. City of Arlington*, 888 S.W.2d 123, 127 (Tex.App.—Fort Worth 1994, no pet.); *cf. Woodall*, 49 F.3d at 1127–28. The basis for these holdings is that there is less interest in protecting "material on the borderline between pornography and artistic expression than in free dissemination of ideas of social and political significance." *See 2300 Inc.*, 888 S.W.2d at 127 n. 3. We so hold. Kaczmarek's second point is overruled.

## POINT III

Whether Sections 28–121 to 28–135 of the Houston Code of Ordinances violate rights protected under Article I, Section 6 of the Texas Constitution.

■ In his third point, Kaczmarek contends that Houston's sexually oriented business laws violate Article I, Section 6 of the Texas Constitution. Article I, Section 6 of the Texas Constitution states "no preference shall ever be given by law to any religious society or mode of worship." TEX. CONST. art I, § 6. Section 28–124(b)(1) states that a permit for a sexually oriented business will not be issued if the enterprise is located within 750 feet of any school, church, or licensed day care center. The State urges that Kaczmarek is without standing to challenge the statute on this ground because the "church distance" requirement of the ordinance was not the cause of his arrest. In support, the State contends that Kaczmarek was arrested for operating without a permit, and the record indicates that La Bare could not receive a permit because it was too close to a *school*.

As noted in *Santikos v. State*, 836 S.W.2d 631, 633 (Tex.Crim.App.1992), "it is incumbent upon the appellant to show that in its operation the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient." *Santikos*, 836 S.W.2d at 633 (quoting *Parent v. State*, 621 S.W.2d 796, 797 (Tex.Crim.App. 1981)). *See also Briggs v. State*, 740 S.W.2d 803, 806 (Tex.Crim.App.1987). A limited exception to this rule has been recognized by the United States Supreme Court for statutes which broadly prohibit speech protected by the First Amendment; however, no such exception has been recognized in the Texas Courts for an ordinance claimed to violate Article I, Section 6 of the Texas Constitution. *See Santikos*, 836 S.W.2d at 633 (noting the limited exception). Here, Kaczmarek has failed to show, or even assert, that Section 28–124(b)(1) is unconstitutional as applied to him in his situation. For this reason, and in the interest of not deciding constitutional issues on a broader basis than the record requires, Kaczmarek's third point is overruled. *See Briggs*, 740 S.W.2d at 806–07 (noting that the constitutionality of a statute is not to be determined unless absolutely necessary to decide the case); *cf. Smith v. State*, 899 S.W.2d 31 (Tex.App.—Austin 1995,

pet. ref'd); *State v. Garcia*, 823 S.W.2d 793 (Tex.App.—San Antonio 1992, pet. ref'd) (holding that a court of appeals must not decide constitutional issues on a broader basis than the record requires).

### POINT IV

**Whether Sections 28–121 to 28–135 of the Houston Code of Ordinances are unconstitutionally vague.**

In his fourth point, Kaczmarek contends that Sections 28–121 to 28–135 of the Houston Code of Ordinances and Sections 243.001 to 243.010 of the Local Government Code are unconstitutionally vague. Specifically, Kaczmarek complains that the terms "primary business" and "major business" are not defined and, that the ordinance does not require a culpable mental state requiring that the defendant know the business was sexually oriented. The State, in its brief, argues that while the terms are not expressly defined, they are understood as used in common and ordinary parlance and therefore are sufficient to provide a person of common intelligence with notice of the forbidden conduct.

 In analyzing a challenged statute, a court begins with a presumption of validity. *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, writ dism'd w.o.j.). The burden is on the individual who challenges the act to establish its unconstitutionality. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). A reviewing court must make every effort to afford a statute a constitutional construction. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). In order to pass constitutional muster, the statute must meet a two-pronged vagueness test: First, does the statute provide an ordinary, law-abiding individual with sufficient notice that his conduct is violative of criminal law. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App.1989) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Second, the statute must provide explicit standards to law enforcement personnel to prevent arbitrary or discriminatory enforcement. *Bynum*, 767 S.W.2d at 773. As noted in *Engelking v. State*, 750 S.W.2d

213, 215 (Tex.Crim.App.1988), the mere fact that not all words are defined by a statute does not make the statute vague. *Engelking*, 750 S.W.2d at 215. In *Briggs*, it was noted that a statute is "void for vagueness only when no standard of conduct is obtained at all, or where no core of prohibited activity is defined." *Briggs*, 740 S.W.2d at 806 (quoting *Margaret S. v. Edwards*, 794 F.2d 994, 1000 (5th Cir.1986) (Williams, J., concurring)). Kaczmarek's argument that *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) and *Blanco v. State*, 761 S.W.2d 38 (Tex.App.—Houston [14th Dist.] 1988, no pet.) require a higher standard than that explained here is unpersuasive. *Keyishian* involved the broad regulation of political speech. *See Keyishian*, 385 U.S. at 591–92, 87 S.Ct. 675. As noted earlier in this opinion, political speech is the most protected form of speech. *See American Mini Theatres*, 427 U.S. at 61, 96 S.Ct. 2440. In *Blanco*, the court merely held that unless a statute reaches a substantial amount of constitutionally protected speech, a facial challenge of vagueness may not be maintained. *Blanco*, 761 S.W.2d at 40–41. Where such First Amendment rights are present, the more exacting constitutional scrutiny may come into play; in this case, the standard described in *Bynum* is sufficient.

 Here, Kaczmarek was charged with operating a sexually oriented business without a permit. Section 28–122 clearly provides that it is unlawful to operate such an enterprise without a permit. Further, the ordinance contains detailed definitions for all of the essential terms. While the terms "primary business" and "major business" are not expressly defined, the terms are understandable by their common and ordinary usage. *Bynum*, 767 S.W.2d at 774. The ordinances at issue are, therefore, sufficient to provide a person of common intelligence with notice of the forbidden conduct, *i.e.*, that one may not operate a sexually oriented business without a permit.

 Finally, Kaczmarek's assertion that Section 28–122(a) is unconstitutionally vague because it does not require a culpable mental state is without merit. Section 1.03(b) states

"the provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise." TEX. PENAL CODE § 1.03(b). Title 2 includes Section 6.02(b) of the Penal Code which states "[i]f the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." TEX. PENAL CODE § 6.02(b). The Houston Code of Ordinances is among the "other laws" described by Texas Penal Code Sections 1.03(b), 1.07(30), *cf. Honeycutt v. State,* 627 S.W.2d 417, 422 (Tex. Crim.App.1981). Therefore, the Houston Code of Ordinance Section under which Kaczmarek was charged, Section 28–122(a), requires under Section 6.02(b) a culpable mental state unless it is plainly dispensed with by the ordinance. The ordinance does not contain a provision dispensing with a culpable mental state. In this case, the State recognized that prosecution of an offense defined by the ordinance included a culpable mental state under Section 6.02(b) *supra.* This is demonstrated expressly in the information which charged Kaczmarek; it states in relevant part: Kaczmarek "did then and there unlawfully intentionally and knowingly conduct business in a sexually oriented enterprise...." Kaczmarek's fourth point is overruled.

**POINT V**

**Whether the trial court erred in denying Kaczmarek's motion to quash the information.**

In his fifth point, Kaczmarek claims that the trial court erred in denying his motion to quash the information. Kaczmarek asserts that the information failed to provide him with sufficient notice of the State's charges against him.

Kaczmarek was charged with operating a sexually oriented business without a permit in violation of Section 28–122(a). The charging instrument states:

Comes now the undersigned Assistant District Attorney of Harris County, Texas, on behalf of the State of Texas, and presents in and to the County Criminal Court at Law No. 8 of Harris County, Texas, that in Harris County, Texas, Charles Joseph Kaczmarek, hereafter styled the defendant, on or about September 4th, 1996, did then and there unlawfully, intentionally and knowingly conduct business, a sexually oriented enterprise, namely, an adult cabaret located in the City of Houston at 6447 Richmond Avenue, deliver and provide customer merchandise, goods or entertainment offered on enterprise premises, and said enterprise did not have a permit from the chief of police and designated director as required by Section 28–122(a) of Houston City Ordinance.

Appellant alleges in his Motion to Quash that the information is defective in that it does not set forth the offense charged in plain and intelligible words.

Specifically:

1. The information fails to state in which manner or means this defendant conducted business in an enterprise;
2. The information fails to state in which manner or means the business this defendant conducted was an enterprise;
3. The information fails to set forth how or what acts, if any, committed by this defendant, in conducting a business, resulted in this business being an adult cabaret;
4. The information fails to set forth which of the definitions of customer the State intends to rely upon;
5. The information fails to set forth which of the twelve (12) possible manners and/or means of entertainment allegedly provided the State intends to rely upon; and
6. The ordinance upon which the information is based is vague and overbroad, and violates the First Amendment to the United States Constitution.

The State notes that a charging instrument in order to be sufficient must show that an offense was committed, give the defendant notice of what he is charged with, and provide facts sufficient to bar a subsequent prosecution for the same offense. *See DeVaughn v. State,* 749 S.W.2d 62, 67–69

(Tex.Crim.App.1988); *Terry v. State*, 471 S.W.2d 848, 852 (Tex.Crim.App.1971). Article 21.21(7) of the TEXAS CODE OF CRIMINAL PROCEDURE requires that an offense alleged in an information "... be set forth in plain and intelligible words." Tex.Crim.Code P. 21.21(7). However, a charging instrument which tracks the words of the penal statute in question is generally held to be legally sufficient. *See Lewis v. State*, 659 S.W.2d 429, 431 (Tex.Crim.App.1983). In the *Lewis* case, the charging instrument charged appropriation of property with intent to deprive the complainant of the property without consent. The defendant filed a Motion to Quash asserting the indictment failed to specify which statutory definition or variant was involved in the alleged act of appropriation. In affirming the conviction, the Court held:

> Subject to rare exceptions, an indictment that tracks the words of the penal statute in question is legally sufficient. *Marrs v. State and Thomas v. State* ... The terms and elements of the offense are defined within the Penal Code; definitions of terms and elements are essentially evidentiary and need not be alleged in the indictment.

*Id.* The Court went on to state:

> ... we conclude that the indictment, read as a whole, gave adequate notice that the term "appropriate" referred only to § 31.01(5)(B). Thus, the trial court did not err in refusing the appellant's motion to quash the indictment.

*Id.* at 432. The Court reversed the judgment of the Court of Appeals and affirmed the judgment of the trial court.

In *Daniels v. State*, 754 S.W.2d 214 (Tex. Crim.App.1988), the Court held that the charging instrument need not include evidentiary facts which are not necessary to afford a defendant with the required notice. In *Daniels*, the indictment charged the defendant with unlawful delivery by "constructive transfer" of marijuana. Daniels contended that the trial court erred in overruling his motion to quash the indictment because the term "constructive transfer" was an ambiguous term that did not give notice of the acts charged. The Court of Appeals agreed and reversed the judgment of the trial court. On

petition for discretionary review, the Court of Criminal Appeals pointed out that the statutory definition of "deliver" or "delivery" contemplates three types of "delivery": (1) an actual transfer; (2) a constructive transfer; and (3) an offer to sell.

The indictment charged Daniels with intentionally and knowingly delivering to X by constructive transfer a quantity of marijuana, etc. The Court of Criminal Appeals stated:

> Although an indictment which tracks the language and terms of the statute is ordinarily sufficient, if the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice as required, merely tracking the language of the statute may be insufficient. *Terry v. State*, 471 S.W.2d 848 (Tex. Crim.App.1971)....

> The State, however, is not required to plead evidentiary facts which are not essential to provide the required notice to the accused. *Beck v. State*, 682 S.W.2d 550 (Tex.Crim.App.1985) In *Thomas v. State*, 621 S.W.2d 158 (Tex.Crim.App.1980), we stated that usually when the terms and elements in the indictment are statutorily defined, the definitions are essentially evidentiary and need not be further alleged in the indictment....

> In *Ferguson v. State*, 622 S.W.2d 846 (Tex. Crim.App.1980), the indictment, in pertinent part, alleged that appellant on or about April 25, 1975, did "unlawfully, intentionally and knowingly deliver to Powell, a controlled substance, namely Heroin...."

> The Court reversed Ferguson's conviction, holding that the motion to quash should have been granted because the indictment, while using the statutorily defined word "deliver," failed to specify which legal theory or theories (types) of delivery contained within that definition that the State was going to rely upon in its proof....

> We observe that Ferguson stands for the proposition that an indictment for the delivery of a controlled substance must specify type or types of delivery the State would rely upon and need not allege the precise manner by which a specified type of delivery was performed....

When statutory words are not defined, they are ordinarily given their plain meaning without regard to distinction between construction of penal laws and laws on other subjects, unless the act clearly shows that they were used in some other sense. . . .

. . . the indictment charged the act of delivery, which is statutorily defined and which is ordinarily sufficient, and further to meet the specificity of *Ferguson* the indictment alleged the type of delivery as "constructive transfer." Although that term is not statutorily defined, it is to be given its common meaning. We conclude that the trial court properly overruled the motion to quash the indictment.

*Daniels,* 754 S.W.2d at 218–20; *Thomas v. State,* 621 S.W.2d 158, 163 (Tex.Crim.App. 1980).

In *Marrs v. State,* 647 S.W.2d 286 (Tex. Crim.App.1983), the Court of Criminal Appeals held that a burglary indictment was sufficient to give defendant full and fair notice of charges against him though it did not limit and further define terms "enter," "habitation," "effective consent," and "owner." *Marrs,* 647 S.W.2d at 289. The Court pointed out that these terms and elements are defined within the Penal Code and the definitions of terms and elements are essentially evidentiary and need not be alleged in the indictment, citing *Thomas v. State, supra. Id.* The Court held that a defendant is entitled to notice of acts or omissions he is alleged to have committed, citing *Gorman v. State,* 634 S.W.2d 681 (Tex.Crim.App.1982) and *Ferguson v. State,* 622 S.W.2d 846 (Tex. Crim.App.1980), and held that the failure to define "owner" and "effective consent" in the indictment was not necessary. *Id.* at 290.

In the instant case, the information tracks the words of the ordinance. It details each element of the offense, that is that Kaczmarek operated an adult cabaret within the City of Houston, providing entertainment without a permit. The acts that are alleged to have occurred constituting the conduct of the business are the acts of delivery and providing to a customer merchandise, goods, and entertainment. Appellant is charged with having intentionally and knowingly conducted a business in a sexually oriented enterprise. The Ordinance provides that conduct may be committed by delivering or providing to any customer any merchandise, goods, entertainment, or other services offered on the enterprise premises. The information charges that that conduct was to deliver and provide to a customer merchandise, goods, and entertainment offered on the enterprise premises. Conduct and delivery are defined by specific acts in the information. The terms "entertainment," "enterprise," and "adult cabaret" are defined in the ordinance and are evidentiary in nature.

■ As noted in *Marrs,* it is not necessary for the State to allege evidentiary facts. *Marrs,* 647 S.W.2d at 289; *Daniels,* 754 S.W.2d at 218; *Matter of S.D.W.,* 811 S.W.2d at 748. We therefore hold that the trial court's denial of Kaczmarek's motion to quash the information was appropriate. Kaczmarek's fifth point is overruled.

### POINT VI

**Whether the trial court erred in denying Kaczmarek's motion to suppress evidence obtained following an unlawful warrantless arrest.**

■ In his sixth point, Kaczmarek contends that the trial court erred in denying his motion to suppress evidence obtained following an unlawful warrantless arrest. Kaczmarek urges that because his arrest was without a warrant, the photographs taken are the "fruit of the poisoned tree," quoting *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The State argues that Article 14.01(b) of the Texas Code of Criminal Procedure allows a warrantless arrest if an offense is committed in the presence of a peace officer. *See also Amores v. State,* 816 S.W.2d 407, 413 (Tex. Crim.App.1991). In *Amores,* it was noted that a warrantless arrest is allowed if probable cause exists. *Amores,* 816 S.W.2d at 413. In Texas, the "totality of the circumstances" test applies for determining if probable causes exists. *Id.* "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are suffi-

cient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense." *Id.*

In this case, the officers testified that they knew that La Bare did not have a permit to operate as a sexually oriented business. The officers were present while the activities which violated the ordinance occurred. Specifically, at least one officer testified that the dancer's buttocks were exposed thereby requiring a permit to operate. *See* Houston Code of Ordinances §§ 28–121, –122. Although Kaczmarek does not specifically argue, the State addresses in its brief the fact that the arresting officers were not the same officers that observed the commission of the unlawful activity. Kaczmarek does mention this fact, but does not assert that this is the foundation for his point. However, as the State notes, "the sum of the information known to the cooperating agencies or officers at the time of the arrest or search by any of the officers involved is to be considered in determining whether there was sufficient probable cause." *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App. 1982). Therefore, the warrantless arrest was proper and the photographs are not the fruit of the poisoned tree. Kaczmarek's sixth point is overruled.

### POINT VII

**Whether the trial court erred in admitting certain photographs into evidence over Kaczmarek's objection that their probative value was substantially outweighed by their undue prejudice.**

In his seventh and final point, Kaczmarek contends that the trial court erred in admitting certain photographs into evidence over his objection that the probative value of the photographs was substantially outweighed by their undue prejudice.

These photographs, taken at the time of Kaczmarek's arrest, depict a number of the dancers at La Bare on that night. The photographs display the dancers; the vantage point is from behind, and the pictures demonstrate that while the dancers are wearing bikini-type underwear, their buttocks are exposed. Kaczmarek argues that the photographs were staged and are therefore unduly prejudicial because they do not accurately depict how the dancers were attired while performing. Kaczmarek claims that the bikinis do in fact cover the buttocks; however, because the officers directed the dancers to sit before taking the photographs, and because the dancers were unable to adjust the bikinis after sitting, Kaczmarek urges, the bikinis are not in the position they properly and normally occupy. Therefore, Kaczmarek claims, the photographs were unduly prejudicial to his client and should have been excluded by the court.

In *Martin v. State,* 475 S.W.2d 265, 267 (Tex.Crim.App.1972), it was held that "if a photograph is competent, material, and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury." *Martin,* 475 S.W.2d at 267. In *Hall v. State,* it was held that "only when the probative value of the photograph is very slight and the inflammatory aspects great will it be an abuse of discretion to admit the photograph." *Hall,* 619 S.W.2d at 158. In this case, the photographs are relevant to whether a sexually oriented business was operated by Kaczmarek on the night of his arrest. The pictures are admissible as an aid to the jury in understanding the testimony concerning the activities at La Bare on the night of Kaczmarek's arrest. *See Harris v. State,* 661 S.W.2d 106, 107 (Tex.Crim.App. 1983) (holding that "where pictorial evidence will help the jury to understand verbal testimony ... a judge does not abuse its discretion in admitting the photograph."). Whether or not the photographs accurately depict the dancers while performing does not render the photographs unfairly prejudicial or inadmissible. Instead, this complaint goes to the probative import of the photographs. In this case, the jury heard testimony concerning the dancers' attire while performing. The jury was therefore able to determine what, if any, value to attach to these photographs. Kaczmarek's seventh point is overruled. The judgement of the trial court is affirmed.