August 29, 2008

The Honorable David H. Aken
San Patricio County Attorney
San Patricio County Courthouse, Room 108
Sinton, Texas 78387

Opinion No. GA-0658

Re: Maximum distance that a county may require that a sexually oriented business be located from a residence, church, elementary school, and other designated facilities (RQ-0680-GA)

Dear Mr. Aken:

Chapter 243, Local Government Code, authorizes municipalities and counties to regulate sexually oriented businesses—sometimes referred to as adult businesses or adult entertainment businesses. *See* TEX. LOC. GOV'T CODE ANN. §§ 243.001–.011 (Vernon 2005). You explain that San Patricio County has adopted the following regulation in relation to sexually oriented businesses:

> The operation of sexually oriented businesses is prohibited on premises that are located within 1300 feet of:
>
> (1) a residential property;
> (2) a church;
> (3) a public or private elementary school;
> (4) a child care facility;
> (5) a public park;
> (6) another sexually oriented business .... [1]

In relation to such locational restrictions, you ask the following questions:

> 1) Would a regulation requiring that certain sexually oriented businesses be located a minimum of 2000 feet from designated places (as indicated above) exceed the legislative authority granted to counties?

---

[1] Letter from Honorable David H. Aken, San Patricio County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 19, 2008) (on file with the Opinion Committee, *also available at* http://www .texasattorneygeneral.gov) [hereinafter Request Letter].

> 2) What is the maximum distance from designated places (as indicated above) that a county can require that sexually oriented businesses be located without exceeding the legislative authority granted to counties?

Request Letter, *supra* note 1, at 2.

## I.      Analysis

### A.      State Statute

It is long held that a county commissioners court may exercise only those powers expressly granted by the Texas Constitution or the Legislature together with such implied powers as are necessary to accomplish the powers expressly conferred. TEX. CONST. art. V, § 18(b); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003); *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941). Chapter 243, Local Government Code, authorizes a county to adopt regulations regarding sexually oriented businesses that are considered necessary to promote the public health, safety, or welfare. *See* TEX. LOC. GOV'T CODE ANN. § 243.003(a) (Vernon 2005). Section 243.006 expressly authorizes a county to impose certain locational restrictions on such businesses:

> (a)   The location of sexually oriented businesses may be:
>
> (1)   restricted to particular areas; or
>
> (2)   prohibited within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the municipality or county finds to be inconsistent with the operation of a sexually oriented business.
>
> (b)   A municipality or county may restrict the density of sexually oriented businesses.

*Id.* § 243.006.

Section 243.006(a) does not specify a particular distance requirement between sexually oriented businesses and other land uses. And we find no per se requirement established in the case law construing chapter 243. The decision about the distance a sexually oriented business should be located from other specified land uses is thus implicitly left to the discretion of the governing body. *See id.* This discretion is not unfettered, however, but must be exercised within the confines of the federal and state constitutions, as discussed below. Thus, as a practical matter, the exact distance requirement permissible in a county will depend on the application of constitutional principles to the

facts and circumstances of the county.[2] We understand the focus of your questions to be on a county's authority under statute and, thus, advise you only generally as to the constitutional issues raised by your questions.

## B. Constitutional Considerations

While sexually oriented business regulations have been challenged on numerous constitutional grounds, locational limitations have been challenged principally[3] as an abridgement of free speech[4] protections. *See, e.g., SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1275–77 (5th Cir. 1988); *Laredo Rd. Co.*, 389 F. Supp. 2d at 743–44; *Smartt v. City of Laredo*, 239 S.W.3d 869, 872 (Tex. App.—Amarillo 2007, no pet.); *Schleuter v. City of Fort Worth*, 947 S.W.2d 920, 926–27 (Tex. App.—Fort Worth 1997, no pet.). This is the case because "[e]rotic non-obscene printed matter, films, and live entertainment are sheltered by the First Amendment" as speech. *Woodall v. City of El Paso*, 49 F.3d 1120, 1122 (5th Cir. 1995); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 250 (1990) (Scalia, J. concurring in part and dissenting in part) ("Since this Court first had occasion to apply the First Amendment to materials treating of sex, . . . we have been guided by the principle that 'sex and obscenity are not synonymous.' The former, we have said, the Constitution permits to be described and discussed. The latter is entirely unprotected . . . .") (citations omitted).

---

[2]We note that distance requirements greater than those you propose here have, under certain circumstances, been upheld. *See, e.g., Laredo Rd. Co. v. Maverick County*, 389 F. Supp. 2d 729, 747 (W.D. Tex. 2005) (holding that a one mile—5,280 foot—distance requirement in a rural county did not violate the First Amendment but striking the regulations down for other constitutional infirmities). And county regulations prohibiting sexually oriented businesses within a specified distance of the type of land uses you list—residential property, churches, schools, child care facilities, and public parks—have likewise been upheld. *See, e.g., Lindsay v. Papageorgiou*, 751 S.W.2d 544, 545, 549 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (holding that Harris County regulations that required a sexually oriented business permit applicant to certify it was located a minimum of 1,500 feet from any child care facility, church, dwelling, hospital, public building, public park or school did not exceed the authority of the statutory predecessor to section 243.006).

[3]Locational regulations have been challenged on various other grounds. In *Kaczmarek v. State*, for instance, the manager of an adult lounge unsuccessfully argued that a city ordinance prohibiting a sexually oriented business from being located within 750 feet of any school, *church*, or licensed day care violated article I, section 6 of the Texas Constitution which provides that "no preference shall ever be given to any religious society or mode of worship." *Kaczmarek v. State*, 986 S.W.2d 287, 289, 291 (Tex. App.—Waco 1999, no pet.). And, in *Papageorgiou*, the owner and operator of a sexually oriented business unsuccessfully argued that a county's locational regulations amounted to a taking of her property in violation of article I, section 19 of the Texas Constitution. *Papageorgiou*, 751 S.W.2d at 550; *see also MJR'S Fare of Dallas, Inc. v. City of Dallas*, 792 S.W.2d 569, 574 (Tex. App.—Dallas 1990, writ denied) (involving an unsuccessful takings challenge to a city's locational regulations).

[4]The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech" and has been made applicable to the States through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. I; *id.* amend. XIV, § 1; *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963). The Texas Constitution provides that "no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8. Courts have held that, as applied to sexually oriented business regulations, the same level of protection is afforded under both the Texas and United States Constitutions. *See Woodall v. City of El Paso*, 49 F.3d 1120, 1127–28 (5th Cir. 1995); *Kaczmarek*, 986 S.W.2d at 291; *2300, Inc. v. City of Arlington*, 888 S.W.2d 123, 127 (Tex. App.—Fort Worth 1994, no writ).

Despite the fact that such materials and activities may be constitutionally protected, they may be regulated to minimize their adverse secondary effects. The United States Supreme Court, in *City of Renton v. Playtime Theatres, Inc.*, established that a local government may constitutionally impose content-neutral time, place, and manner restrictions on sexually oriented businesses if the local government can show a substantial governmental interest in regulating the business and if the regulations do not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47 (1986); *see City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 433–34 (2002) (reaffirming the analytical framework in *Renton*).[5]

Locational restrictions are content-neutral time, place, and manner regulations "if they do not ban [sexually oriented] businesses throughout the whole of a jurisdiction and are 'designed to combat the undesirable secondary effects of such businesses' rather than to restrict the content of their speech *per se*." *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288, 291 (5th Cir. 2003) (quoting *Renton*).

If the local regulation is a content-neutral time, place, and manner regulation,[6] the court then inquires whether the regulation is narrowly tailored to serve a significant government interest and whether the regulation leaves open ample alternative avenues of communication. *See Schleuter*, 947 S.W.2d at 926 (citing *Renton*); *see also Renton*, 475 U.S. at 47 ("'content-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication").

A local regulation "'is sufficiently well tailored if it effectively promotes the government's stated interest.'" *Schleuter*, 947 S.W.2d at 927; *but see Encore Videos*, 330 F.3d 288 at 293 n.6 (indicating that the Fifth Circuit has adopted a new narrow tailoring standard in this context: "A time, place, and manner regulation meets the narrow tailoring standard if it 'targets and eliminates no more than the exact source of the evil it seeks to remedy.'") (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)).

Under Fifth Circuit jurisprudence, whether a local regulation furthers a substantial governmental interest is a two-part inquiry: (1) does a substantial governmental interest actually exist, and (2) does the regulation further that interest. *See Fantasy Ranch, Inc.*, 459 F.3d at 558–59; *see also Encore Videos*, 330 F.3d 288 at 293 ("This approach arguably conflicts with *City of Renton*,

---

[5]While recognizing the United States Supreme Court is unquestionably the final arbiter regarding the interpretation of this test, we note that this test is construed in different ways in different courts as exemplified in *Encore Videos*. *See Encore Videos*, 330 F.3d at 293 (discussing its interpretation of the substantial government interest standard). Our discussion of the various prongs of this test here is intended to be general in nature and does not seek to highlight every tension and distinction that may exist among these courts and their interpretations of this test.

[6]"If the government's interest is indeed related to the suppression of content, then that regulation of symbolic speech is subject to strict scrutiny." *Fantasy Ranch, Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006). Under a strict scrutiny standard, the local government faces the daunting task of showing that its content-based regulation "is a *precisely* drawn means of serving a *compelling* state interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 540 (1980) (emphasis added).

which mandates only that a statute be 'designed to serve a substantial government interest' and does not require evidence of effectiveness.") (quoting *Renton*, 475 U.S. at 47).

In relation to locational limitations, the question of whether a regulation leaves open ample alternative avenues of communication is an inquiry into whether "the areas left available are inadequate to satisfy the demand for sexually oriented business locations." *Schleuter*, 947 S.W.2d at 927–28; *see also Smith v. State*, 866 S.W.2d 760, 764 (Tex. App.—Houston [1st Dist.] 1993, writ ref'd) (holding a city's locational regulations left open alternative avenues of communication where the ordinance did not totally ban or limit the number of adult bookstores); *Papageorgiou*, 751 S.W.2d at 550 (holding that a county's locational regulations allowed reasonable avenues of communication where they did "not totally ban operation of all such enterprises in the county" or "limit the enterprises in number").

*Renton* establishes that commercial viability is not a factor in determining whether land is "available." *Renton*, 475 U.S. at 54; *see also Papageorgiou*, 751 S.W.2d at 550 (citing to *Renton* for the notion that a county has no duty to insure a commercially viable site). The Fifth Circuit has interpreted *Renton* to mean that while property does not have to be commercially desirable, it must be both physically and legally available. *See Woodall*, 49 F.3d at 1124.; *Schleuter*, 947 S.W.2d at 928. Assuming that sites are available, a court will also consider whether "the demand for sexually oriented business locations exceeds the number of locations available." *Schleuter*, 947 S.W.2d at 929.

Free speech challenges against locational regulations often center around the issue of whether alternative avenues of communication are available. Unfortunately, there is no exact percentage of land or number of sites that one can identify as necessary to meet constitutional standards. Determining whether a regulation leaves "adequate alternative avenues of communication" is highly fact sensitive and may vary significantly from one geographic location to another.[7]

## II.      Conclusion

When faced with local legislation that increased distance requirements as to sexually oriented businesses, as you propose to do here, the Fifth Circuit explained that a governing body "'has the prerogative of experimenting with different possible solutions to [local] problems even when dealing with First Amendment interests.'" *N.W. Enters., Inc. v. City of Houston*, 352 F.3d 162, 177 (5th Cir. 2003) (quoting district court with approval). While section 243.006(a) gives a county discretion to impose locational restrictions, such discretion must be exercised in light of constitutional constraints as applied to the facts and circumstances of the jurisdiction at issue.

---

[7]Locational limitations may be implicated in challenges under other first amendment theories not otherwise discussed herein. In *Kaczmarek*, for example, the manager of an adult business challenged a city ordinance as an unconstitutional prior restraint on free speech arguing that the chief of police had unbridled discretion in administering the ordinance. *Kaczmarek*, 986 S.W.2 at 290. The court rejected the argument in part because the ordinance contained detailed procedures for measuring the distance limitations.

### S U M M A R Y

Local Government Code section 243.006(a) authorizes a county to, among other things, prohibit a sexually oriented business from locating "within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use . . . [found] to be inconsistent with the operation of" such a business. TEX. LOC. GOV'T CODE ANN. § 243.006(a) (Vernon 2005). Section 243.006(a) does not establish any particular distance requirement between sexually oriented businesses and other land uses, but implicitly leaves this decision to the discretion of the governing body adopting the restriction. That discretion must be exercised within the confines of the federal and state constitutions, as interpreted by the courts. The exact distance that a county may require a sexually oriented business be located from other land uses is a fact-sensitive inquiry.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee