

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00160-CR

**MELVIN RAY CHILDRESS,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2006-1118-C2**

## O P I N I O N

Melvin Childress was charged by indictment with two felony offenses: (1) dating violence assault (enhanced); and (2) aggravated assault. Childress was alleged to have poured gasoline on Tamala, his married girlfriend, and then threatened to light it with a lighter. A jury found him guilty on both charges and assessed prison sentences of ten and forty-five years, respectively, and a $10,000 fine on each. Asserting three issues, Childress appeals. We will affirm.

**Factual Sufficiency**

We begin with Childress's third issue, which alleges that the evidence is factually insufficient. In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7. The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

For the State to prove that Childress committed dating violence assault, it was required to prove that Childress intentionally, knowingly, or recklessly caused bodily injury to another person (by pouring gasoline on her) with whom he had a dating relationship. TEX. PEN. CODE ANN. § 22.01(a)(1), (b)(2) (Vernon Supp. 2008). The offense was enhanced to a third-degree felony by Childress's stipulation to his prior conviction

of an assault offense against a family or household member. *Id.* § 22.01(b)(2). For the State to prove that Childress committed aggravated assault, it was required to prove that Childress intentionally or knowingly threatened another person with imminent bodily harm and exhibited a deadly weapon (gasoline and lighter) during the assault. *Id.* §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2008).

Tamala testified that she and Childress met in August of 2005 and, despite Tamala's being married, they formed a dating and sexual relationship. Childress gave her attention when her marriage was struggling. They enjoyed each other's company, did things together, and took out-of-town trips together. They talked about their problems together, and she stayed over at his house.

On May 5, 2006, Tamala and several friends were at a restaurant having drinks. While at the restaurant, Childress called Tamala several times, and she lied to him, saying that she was still at work. On her way home, he called Tamala again, and she agreed to meet him at a convenience store around 11:00 p.m. When Tamala arrived, Childress was already there, standing next to his car with the trunk open. Tamala parked alongside him but did not get out of her car. Childress was angry and asked her where she had been, and she said she had been at a restaurant with coworkers. Tamala began to leave, and Childress asked her to wait and asked her again where she had been. Childress then got a container out of his trunk, poured its contents on Tamala through her open car window, and told her, "I'm going to set your bitch ass on fire." The gasoline blurred and burned her eyes, but she could see that Childress was holding a lighter. She scrambled out of her car's passenger side and ran into the store, with

Childress following her.

The store clerk said that Tamala was covering her eyes and crying hysterically as she entered the store; she smelled like gas. Childress came in and told the clerk that Tamala had poured gas on herself, but the clerk didn't believe him; she had seen Childress outside with a bottle of liquid before the incident. A bystander was in the store, and he testified that Tamale smelled of gas, was frightened, and said that Childress had tried to light her on fire. The responding officers also said that Tamala smelled of gas and told them that Childress had poured gasoline on her.

After the incident, Tamala said that Childress threatened to tell her husband about their affair if she did not sign an affidavit of nonprosecution. Tamala said she signed one because she wanted the whole situation to "go away." She also continued her affair with Childress and eventually told her husband about him.

Childress's theory is that Tamala poured the gasoline on herself and that she made up the allegation against Childress, and that her lack of credibility causes the evidence to be factually insufficient.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State,* 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). The jury may believe all, some, or none of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers,* 125 S.W.3d at 670. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony."

*Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002); *see also Sharp*, 707 S.W.2d at 614; *Jaggers*, 125 S.W.3d at 670.

> The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. *See* GEORGE E. DIX & ROBERT O. DAWSON, 42 TEXAS PRACTICE—CRIMINAL PRACTICE AND PROCEDURE § 36.69 (Supp. 1999). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.

*Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).

By finding Childress guilty, the jury obviously believed Tamala, and the record in this case warrants our deference to the jury's credibility determination. Therefore, considering all of the evidence in a neutral light, we find that the evidence is factually sufficient to support the jury's guilty findings. The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdicts clearly wrong and manifestly unjust. Because the evidence is factually sufficient, we overrule Childress's third issue.

## Double Jeopardy

We now turn to Childress's first issue, which complains of a double-jeopardy and collateral-estoppel violation arising from multiple punishments for the same offense. We first note that Childress did not raise this complaint at trial, but he will be

excused from the ordinary rules of procedural default "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); *accord Murray v. State,* 24 S.W.3d 881, 888 (Tex. App.—Waco 2000, pet. ref'd). Because we have a complete record, "it can be determined from undisputed facts clearly apparent on the face of the record" whether there has been a jeopardy violation. *See Murray,* 24 S.W.3d at 889.

The Double Jeopardy Clause of the 5th Amendment protects an accused from being punished more than once for the same offense. U.S. CONST. Amend. V; *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim. App. 2008). Two offenses may be the same if one offense stands in relation to the other as a lesser-included offense, or if the two offenses are defined under distinct statutory provisions but the legislature has made it clear that only one punishment is intended. *Littrell*, 271 S.W.3d at 275-76; *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008). When multiple punishments arise out of one trial, the *Blockburger* test is the starting point in analyzing the two offenses. *Bigon*, 252 S.W.3d at 370. Under the *Blockburger* test, two offenses are not the same if one requires proof of an element that the other does not. *Id.*; *see Blockberger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In Texas, when resolving whether two crimes are the same for double-jeopardy purposes, we focus on the elements alleged in the charging instrument. *Bigon*, 252 S.W.3d at 370.

In the first count of the indictment, the State charged Childress with dating violence assault (enhanced). The indictment alleged the following elements for dating

violence assault, enhanced to a third-degree felony: (1) Childress, (2) intentionally, knowingly, or recklessly, (3) caused bodily injury to Tamala, (4) a person with whom Childress had a dating relationship, (5) by pouring gasoline on her, and (6) Childress had a prior conviction for family violence assault. *See* TEX. PEN. CODE ANN. § 22.01(a)(1), (b)(2).

In the second count, the State charged Childress with aggravated assault, alleging the following elements: (1) Childress, (2) intentionally or knowingly, (3) threatened Tamala with imminent bodily injury by burning, (4) and used or exhibited a deadly weapon—gasoline and a lighter—during the commission of the assault. *See id.* §§ 22.01(a)(2), 22.02(a)(2).

Childress's principal argument is that the pouring of gasoline on the victim is the same act in both counts, that the entirety of the acts in the first count is included within the acts making up the second count, and that the same acts are elements of the same criminal episode. We are not persuaded. First, we note that the Supreme Court eliminated the "same conduct" rule—the idea that just because Childress engaged in only one "culpable act," he cannot be convicted of more than one offense. *See United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993); *Bigon,* 252 S.W.3d at 369. And under Texas law, an accused may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. TEX. PEN. CODE ANN. § 3.02(a) (Vernon 2003).

At trial there may be a substantial overlap in the proof of each offense, but under the *Blockburger* test, we must examine the separately charged elements of each offense.

*Ex parte McWilliams*, 634 S.W.2d 815, 824 (Tex. Crim. App. 1982). When comparing the two charges as indicted, and taking into account all of the elements that the State must prove for these two charges, the offenses are not the same under a strict application of the *Blockberger* test. The State concedes that an aggravated assault requires an underlying assault, but we agree with it that, in this case, the basis for the underlying assault—the threat of imminent bodily injury—is distinct from the basis for the dating violence assault, which was actual bodily injury.[1] The dating violence assault is not a lesser-included offense of the aggravated assault; it is not established by proof of the same or less than all the facts required to establish the commission of the aggravated assault.[2] Texas law has no bright-line rule that a threat of harm and actual harm cannot arise from the same act and occur simultaneously and that the threat must precede the initial harm. *See Schmidt v. State*, 232 S.W.3d 66, 67-69 (Tex. Crim. App. 2007).

But while the offenses are not the same for the purpose of the *Blockberger* test, our inquiry does not end. *See Bigon*, 252 S.W.3d at 370. We also consider a non-exclusive list of factors to consider when examining whether two offenses are the same in the context of multiple punishments. *See Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999). These factors include: (1) whether the offenses are in the same statutory

---

[1] Family and dating violence assault can only be predicated on bodily injury. *See* TEX. PEN. CODE ANN. § 22.01(b).

[2] We reject Childress's argument that the "allowable unit of prosecution" double-jeopardy concept applies to this case. *See Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999). That concept applies where a single statute has been violated numerous times, either with different victims or by individually listed acts within the same statute, and it is particularly applicable when each alleged violation of the statute is proved in part by the same evidence. *Id.* at 556-57. This concept is inapplicable in this case because two separate offenses, under two different statutes, were committed once. *See id.; cf. Ex parte Rathmell*, 717 S.W.2d 33, 35 (Tex. Crim. App. 1986) (*Blockburger* applies to situations in which criminal conduct violates two separate and distinct statutes).

section; (2) whether the offenses are phrased in the alternative; (3) whether the offenses are named similarly; (4) whether the offenses have common punishment ranges; (5) whether the offenses have a common focus; (6) whether the common focus tends to indicate a single instance of conduct; (7) whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and (8) whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes. *Id*. These factors are not exclusive, and the question ultimately is whether the legislature intended to allow the same conduct to be punished under both of the offenses. *Bigon*, 252 S.W.3d at 371.

It is apparent to us that the legislature intended these two offenses to be treated separately. While they are in the same chapter of the Penal Code, they are separate and distinct statutes, and they are not phrased in the alternative. They do not have common punishment ranges.[3] While they have a related focus—assaults—in this case there is no common focus between the two offenses. The dating violence assault focus is on the bodily injury of a victim in a dating relationship with the defendant, while the focus of aggravated assault in this case is the assaultive conduct in the form of threatening imminent bodily injury with a deadly weapon. The threat of harm was being set on

---

[3] Family and dating violence assault, when enhanced by a prior conviction of the same offense, is a third-degree felony, and the punishment range is two to ten years. TEX. PEN. CODE ANN. § 22.01(b); *Id.* § 12.34(a) (Vernon 2003); *id.* § 12.42(a)(3) (Vernon Supp. 2008). Aggravated assault is a second-degree felony (enhanced here to a first-degree felony because of a prior felony conviction), with a punishment range of two to twenty years. *Id.* § 22.02(b); *id.* § 12.33(a) (Vernon 2003); *id.* § 12.42(b).

fire, while the harm actually suffered was bodily injury to Tamala's eyes and face from the gasoline.

The differing elements between dating violence assault and aggravated assault, as charged, cannot be considered the same under an imputed theory of liability. Dating violence assault, with its bodily injury element (which conceptually would be no different had Childress hit Tamala in the face), is not similar to an imminent threat of bodily injury with a deadly weapon. Finally, neither Childress nor the State has provided us with any legislative history that might indicate whether or not the legislature intended to treat the offenses as the same or different for double-jeopardy purposes.

After reviewing the *Ervin* factors, we determine that the offenses as charged are not the same in the context of multiple punishments. Accordingly, no double-jeopardy violation occurred.[4] We overrule Childress's first issue.

### Facial Challenge to "Dating Relationship" as Vague

We next address Childress's claim in his second issue that the "dating relationship" statute that elevated the assault to a third-degree felony is facially unconstitutional because of its alleged vagueness and overbreadth.[5] A complaint that a

---

[4] Because Childress has not briefed his collateral estoppel argument, he presents nothing for review and we will not address it. *Strange v. Continental Cas. Co.,* 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied); *see* TEX. R. APP. P. 38.1(h).

[5] Childress's second issue mentions the alleged overbreadth of the statute, but overbreadth is not briefed. Nor is it applicable, as Childress does not contend that the statute covers protected First Amendment freedoms. *See Smith v. State,* 959 S.W.2d 1, 24 (Tex. App.—Waco 1997, pet. ref'd) (statute is impermissibly overbroad when, "in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment") (quoting *Bynum v. State,* 767 S.W.2d 769, 772 (Tex. Crim. App. 1989)).

statute is facially unconstitutional may be made for the first time on appeal. *Woodson v. State,* 181 S.W.3d 280, 282 (Tex. App.—Waco 2006, pet. ref'd); *Bryant v. State,* 47 S.W.3d 80, 84 (Tex. App.—Waco 2001, pet. ref'd).

In *Bryant*, we articulated how we review such a vagueness claim:

> In its review of a challenged statute, the court will begin with a presumption of constitutionality. Thus, the burden to establish unconstitutionality falls upon the challenger. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *Kaczmarek v. State,* 986 S.W.2d 287, 292 (Tex. App.—Waco, 1999[, no pet.]).

> There are two basic requirements for a constitutional vagueness challenge that does not involve a First Amendment right. First, the challenger must demonstrate that he has suffered some actual or threatened injury under the statute. In other words, the challenger must have standing to contest the statute. *Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 517-18 (Tex. 1995). Then, the challenger must also show that the statute is impermissibly vague in "all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494-495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In *Kaczmarek,* this court set the standard for evaluating vagueness in a criminal statute. The statute must provide an ordinary, "law-abiding" individual with sufficient notice that his conduct is violative of criminal law. *Kaczmarek,* 986 S.W.2d at 292. The statute must also provide explicit standards to law enforcement personnel to prevent arbitrary or discriminatory enforcement. To successfully show that the statute is unconstitutionally vague on its face, the challenge must establish that "no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (citing *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

*Bryant,* 47 S.W.3d at 84-85 (footnote omitted).

We find that Childress has standing; because of the "dating relationship" issue, his dating violence assault was elevated to a third-degree felony. *See id.* at 85. We thus turn to the vagueness complaint. We appear to be the first Texas appellate court to address such a complaint about the "dating relationship" statute, which provides in

pertinent part:

> (b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature.  The existence of such a relationship shall be determined based on consideration of:
> > (1) the length of the relationship;
> > (2) the nature of the relationship; and
> > (3) the frequency and type of interaction between the persons involved in the relationship.
> (c) A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship" under Subsection (b).

TEX. FAM. CODE ANN. § 71.0021(b, c) (Vernon 2008).[6]

> A statute is unconstitutionally vague if it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" or "provide explicit standards for those who apply them." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972); *accord State v. Markovich,* 77 S.W.3d 274, 279 (Tex. Crim. App. 2002); *Coggin v. State,* 123 S.W.3d 82, 87 (Tex. App.—Austin 2003, pet. ref'd).

*Woodson,* 181 S.W.3d at 282.

Childress's argument is essentially that it "is possible that an ordinary person's interpretation of [dating relationship] could be quite inconsistent even given the guidance set out in the Court's Charge," and that people, including law enforcement, might disagree over whether two persons are in a dating relationship.

The statute's definition of "dating relationship" is defined by commonly used terms; the definition is not complicated.  It takes a common-sense approach to describing a dating relationship and distinguishes a dating relationship from casual acquaintances and ordinary fraternizations.

---

[6] The court's charge contained these definitions.

The State correctly points out that the statute does not lack notice; the conduct that the actor needs notice of is the assault, not the status of the actor's relationship to the victim. It is not a crime to be in a dating relationship, and Childress's conduct would have been criminal had he poured the gasoline on a stranger. Similarly, police would have known to arrest Childress for assault had Tamala been a stranger to him. The fact that their dating relationship, when combined with Childress's prior conviction, increased the offense level to a felony does not create a constitutional notice problem.

Section 71.0021 is not constitutionally vague. We overrule Childress's second issue.

## Conclusion

Having overruled Childress's three issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed April 1, 2009
Publish
[CRPM]