Opinion issued June 3,
2010



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

________________

 

NO. 01-09-00350-CR

________________

 



KIMBERLY KAY BENTON,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee 

 

 



On Appeal from the County Criminal Court
at Law No. 15

Harris County, Texas

Trial Court Cause No. 1538503

 

 



MEMORANDUM OPINION

A jury found appellant,
Kimberly Kay Benton, guilty of conducting a sexually oriented business without
a permit.  See Tex. Loc. Gov’t Code Ann.
§ 243.003 (Vernon 2005); Harris County, Regs. Sexually Oriented Bus. § V (1996).  The parties reached an
agreement as to appellant’s punishment, and in accordance with that agreement,
the trial court sentenced appellant to one year in jail, suspended the
sentence, and placed her on community supervision for two years.  In seven points, appellant argues that the
trial court erred by denying her motions to quash and for new trial because the
charging instrument failed to provide sufficient notice of the charged offense;
instructing the jury on the definition of “adult cabaret;” denying her motion
for new trial because the State failed to disclose Brady evidence, amounting to a denial of due process; and denying
her motion to suppress her oral statement. 
We affirm.

BACKGROUND

          In June 2008,
appellant contacted Sergeant Chris Montemayor of the Vice Unit  at the Harris County Sheriff’s Office.  Appellant identified herself over the phone
as Kimberly Benton, the manager of “Joy of Houston,” and inquired about the regulations
pertaining to a sexually oriented business (S.O.B.).  Specifically, appellant asked what type of
clothing the female entertainers at Joy of Houston should be wearing to operate
legally.  Montemayor informed appellant
that Joy of Houston had not been issued a S.O.B. permit, and accordingly, the
entertainers needed to be clothed in a full bikini and there could not be any
type of sexual activity.  Appellant testified that, after the
phone call, she directed the entertainers to wear bikinis, and the girls
complied for about a “week and a half” but then stopped following her
directions.

          At
trial, Sergeant Montemayor explained that the Harris County regulations
required a business to have a permit if it fell under the regulation’s
definition of “sexually oriented business.” 
This included any business that featured persons in semi-nude or nude
state, or live performances of specified sexual activities.  Montemayor explained that a business must
obtain a permit before operating as a S.O.B. by submitting an application with
a $2500 processing fee and meeting all of the regulations.  

Joy of Houston did not submit
an application for a S.O.B. permit. 
Furthermore, Montemayor informed Joy of Houston that the business could
not meet the regulations to obtain a permit. 
Montemayor testified that, when he spoke with appellant over the phone,
he informed her that the business could not be issued a S.O.B. permit because
it was within 1500 feet of residential dwellings, in violation of the
regulations.  Additionally, the business
was in violation of the S.O.B. regulations prohibiting other structures on the
business’s property.  Specifically, several
trailer homes were located on Joy of Houston’s business property.

The Vice Unit received
complaints that Joy of Houston was operating as a S.O.B.  On June 11, 2008, Sergeant Montemayor and two
other officers went to Joy of Houston in an undercover capacity to investigate
the complaints.  Montemayor observed
activity that required a S.O.B. permit, including women dancing on stage
wearing “transparent pasties” and “thong underwear.”  Additionally, Montemayor saw “women
conducting lap dances on gentlemen throughout the club.”  

On July 17, 2008, the officers
returned to raid the club.  First,
several undercover officers went inside the club and, again, observed conduct
that required a S.O.B. permit.  The
officers testified that they observed women topless, in a semi-nude state, and
dancing in a manner that simulated sexual acts. 
While undercover, Deputy Dan Kributr observed appellant, who he believed
to be a manager, “walking around on the main floor” of the club standing at
different locations and looking around just prior to the raid.  Kributr testified that there appeared to be two
managers working that day and informed the raid team of this observation prior
to their entrance.  Deputy Terrance Burks
also testified that he saw appellant on the main floor of the club speaking
with another person that he believed to be a manager.  Burks testified that appellant was facing the
stage while female entertainers were performing in a semi-nude state.

Later on July 17, 2008,
additional uniformed officers arrived to raid the club.  Montemayor assembled a “large raid team” of approximately
40 to 50 officers in order to secure all the areas of the club.  The Joy of Houston was a “rather large club”
and Montemayor estimated that there would be around a hundred people
inside.  Montemayor testified that the
raid was executed according to the department’s standard procedure.  The raid team made entry, secured the scene,
turned the music off, gathered all the people together, and started separating
the employees, dancers, and customers.  The
patrons were identified, checked for outstanding warrants, and then were
allowed to leave.  

Appellant identified herself
as the general manager when the officers were trying to separate the patrons from
the employees.  Montemayor was given the
task of taking statements of management at the club.  After giving her the statutory warnings,
Montemayor interviewed appellant and obtained her written statement, which
contained the statutory warnings on the face of the document.  Appellant initialled each of the rights and
signed at the end of the written statement. 
When the written statement was offered into evidence at trial,
appellant’s trial counsel said, “We have no objection.” 

In the written statement,
appellant identified herself as Kimberly Benton, and stated, in relevant part:

I was hired June 1st 2008 by Don May, who was the general
manager at the time.  He is no longer
with the company at this time.  I started
June 4th 2008 as the day manager. 
On June 5th the lawyer who represents Spiro, the owner, came
to the club and spoke to us about the licensing issue.  He advised that he had applied for the SOB
license on behalf of the club and we were due to have an inspection by
Vice.  Until then the girls were to wear
full bottom bikini’ [sic] and showed me picture as an example of what they
should wear.

 

I then called the Harris County Sheriffs [sic] Office Vice unit and
spoke to Sergeant C Montemayor who advised that in order to operate legally
without an SOB permit the girls would have to wear full bikini tops and full
bottoms.

 

I then made the girls were [sic] full bikinis.  This lasted for about a week and a half.  The attorney called back two days later and
stated that we had had our inspection and we needed to move the four trailers
off the property and that it would be twenty five hundred dollars for the
license.  At that time I questioned him
on the clothing issue and he stated to me and the owner that now that we had an
application in, the girls could now wear latex over their areolas, any color
but flesh, and full bottoms.  

 

Montemayor testified that Joy
of Houston had not applied for a S.O.B. permit, as appellant claimed in her
statement.  Appellant and Jason Watson,
another manager working on July 17, 2008, were arrested for violating the
S.O.B. regulation following the raid.  

At trial, appellant testified
that she was an “office manager” during the day and spent about 90% of the time
in the office.  She testified that she
was only on the floor of the club about 10% of the time.  Appellant explained the hierarchy of the
management at the club and said the owner (Spiro), the general manager (Don May),
and the club manager (Phillip Dickey) were all superior to her.  Appellant testified that the office manager
and floor manager were at the bottom of the hierarchy and were equal
positions.  Appellant admitted that,
after she was hired, Don May (the general manager) left the company.  Appellant testified that the owner did not
hire someone in his place but denied taking over the general manager’s duties.  

Appellant testified that she
had a S.O.B. Manager license that was issued by the City of Houston.[1]  She offered the license as Defense Exhibit 3,
which featured her name, photograph, and title “Manager.”  Appellant testified that she acquired the
license when she was employed as the floor manager for Rick’s Cabaret.  She testified that she knew Rick’s Cabaret
had a valid S.O.B. license because it was posted on the wall.  Appellant testified that she never saw a
valid S.O.B. license posted at Joy of Houston. 


Sufficiency
of the Charging Instrument

In her first two issues, appellant
argues that the trial court
committed reversible error by denying her motion to quash the information and
her motion for new trial because the information failed to provide her with
adequate notice to prepare her defense and it did not allege sufficient facts
to bar a subsequent prosecution for the same offense.  Specifically, appellant argues the information
failed to identify the type of “adult cabaret” she was charged with conducting.

A.      Standards
of Review

The sufficiency of a charging instrument is a question of law
and is reviewed de novo.  Smith v. State, 297 S.W.3d 260, 267
(Tex. Crim. App. 2009).  An accused’s
constitutional right to sufficient notice may be satisfied by means other than
the language in the charging instrument.  Id. (citing
Kellar v. State, 108 S.W.3d 311, 313
(Tex. Crim. App. 2003)).  “When a motion
to quash is overruled, a defendant suffers no harm unless he did not, in fact,
receive notice of the State’s theory against which he would have to defend.”  Id.;
see also art. 21.19 (“An indictment
shall not be held insufficient, nor shall the trial, judgment or other
proceedings thereon be affected, by reason of any defect of form which does not
prejudice the substantial rights of the defendant”).

We review a trial court’s denial of a motion for new trial
for an abuse of discretion.  Webb v. State, 232 S.W.3d 109, 112 (Tex.
Crim. App. 2007) (citing Charles v. State,
146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).

B.      Applicable
Law

Both the Sixth Amendment to the United States Constitution
and Article I, Section 10 of the Texas Constitution require the State to give an
accused notice before trial of the nature and cause of the accusation against
him.  See
U.S. Const. amend. VI; Tex. Const. art. I, § 10.  A “charging instrument must convey sufficient
notice to allow the accused to prepare a defense.”  State
v. Barbernell, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008).  Chapter 21 of the Texas Code of Criminal
Procedure requires that an information set forth the offense in “plain and
intelligible words” and include “[e]verything . . . which is necessary to be
proved.”  Tex. Code Crim. Proc. Ann. arts. 21.03, 21.21(7), 21.23; see also Barbernell, 257 S.W.3d at
250–51.  “An information is sufficient if
it charges the commission of the offense in ordinary and concise language in
such a manner as to enable a person of common understanding to know what is
meant, and with that degree of certainty that will give the defendant notice of
the particular offense with which he is charged, and enable the court, on
conviction, to pronounce the proper judgment.” 
Barbernell, 257 S.W.3d at 251
(citing Tex. Code Crim. Proc. Ann.
arts. 21.11, 21.23).  Specifically, with
regard to what language must be included, the Court observed:

[I]n most cases a charging
instrument that tracks the statutory text of an offense is sufficient to
provide a defendant with adequate notice. 
When a statutory term or element is defined by statute, the charging
instrument does not need to allege the definition of the term or element.  Typically the definitions of terms and
elements are regarded as evidentiary matters.  But in some cases, a charging instrument that
tracks the statutory language may be insufficient to provide a defendant with
adequate notice.  This is so when the
statutory language fails to be completely descriptive.  The statutory language is not completely
descriptive when the statutes define a term in such a way as to create several
means of committing an offense, and the definition specifically concerns an act
or omission on the part of the defendant.

 

Id. (internal
citations omitted). 

 

Adequacy of notice requires a two step inquiry.  Id. at
255.  First, we must identify the
elements of the offense.  Id.  The
Penal Code defines elements of an offense as the forbidden conduct, the
required culpability, any required result, and the negation of any exception to
the offense.  Tex. Penal Code Ann. § 1.07(a)(22) (Vernon 2003).  Second, “when the Legislature has defined an
element of the offense that describes an act or omission, a court must ask
whether the definitions provide alternative manners or means in which the act
or omission can be committed.”  Barbernell, 257 S.W.3d at 255.  

After conducting the above inquiry in Barbernell, the Court of Criminal Appeals held that an information
alleging driving while intoxicated (DWI) did not need to more specifically
allege which variation of the definition of “intoxicated” the State intended to
prove.  Id. at 256.  The Court
observed that “intoxicated” was an element of the offense that had two
definitions under the statute but held that “the definitions of ‘intoxicated’
[were] purely evidentiary matters” that “d[id] not need to be alleged in a
charging instrument to provide a defendant with sufficient notice.”  Id.  The Court explained:

The State’s choice between
the method of proving intoxication does not in any sense determine what acts,
conduct or behavior of the accused that the State will rely on.  Rather, the choice concerns the type of
evidence the State will rely upon to show particular conduct by the accused—driving
or operating a vehicle—performed while a particular circumstance—intoxication—existed.


 

Id. (citing George E. Dix & Robert O.
Dawson, 41 Texas Practice: Criminal
Practice And Procedure § 20.314 (2d ed. 2001)).

C.      Analysis

          On March 10, 2009, appellant was
charged by amended information with violating the Harris County Regulations for
Sexually Oriented Businesses.  In
relevant part, the amended information alleged:

KIMBERLY KAY BENTON,
hereafter styled the Defendant, heretofore on or about JULY 17, 2008, did then
and there unlawfully intentionally and knowingly conduct business, to wit:
ADULT CABARET as a Class I enterprise, namely THE JOY OF HOUSTON MEN’S CLUB, an
ADULT CABARET in an unincorporated area of Harris County, Texas, without a valid
sexually oriented business permit issued in accordance with the Regulations for
Sexually Oriented Businesses in the Unincorporated Area of Harris County,
Texas.

 

          Section 5 of the Harris County
Regulations for Sexually Oriented Businesses provides that:

No person shall conduct
business as either a Class I or Class II sexually oriented business enterprise
. . . without a valid Sexually Oriented Business Permit (SOBP) issued in
accordance with these regulations.

 

 Harris
County, Regs. Sexually Oriented Bus. § V (1996).  The Regulations provide the following
definition for “Enterprise”:

[A] sexually oriented
business enterprise is a commercial enterprise the primary business of which is
the offering of a service or the selling, renting or exhibit of devices or any
other items intended to provide sexual stimulation or sexual gratification to
the customer.  This definition includes
but is not limited to: sex parlors; nude studios; modeling studios; love
parlors; adult bookstores; adult movie theaters; adult video arcades; adult
movie arcades; adult video stores; adult motels; adult cabarets; escort
agencies; and sexual encounter centers.

 

(1) enterprises are
classified as follows:

 

(i)  Class I enterprises conduct business
regularly at a specific location.

 

(ii) Class
II enterprises are individuals who offer, for compensation, a service intended
to provide sexual stimulation or sexual gratification to patrons at any
location in the County, unless that individual is an employee of a Class I
enterprise working at a location permitted under a Class I SOBP.

 

Id. § IV(q) (1996).  The sexually oriented business regulations
define “adult cabaret” as:

[A] nightclub, bar,
restaurant, or similar commercial establishment that features:

(1) persons who appear
semi-nude or in a state of nudity as defined in this section;

(2) live performances which
are characterized by the exposure of specified anatomical areas or specified
sexual activities as defined in this section; or

(3) films, motion pictures,
computer simulations, video cassettes, slides or other reproductions which are
characterized by the depiction or description of specified sexual activities or
specified anatomical area as defined in this section.

 

Id. § IV(c) (1996).

Unlike the driving while intoxicated allegation in Barbernell which left “intoxicated”
undefined, in the present case, the term “adult cabaret” is not an element of
the offense.  See Barbernell, 257 S.W.3d at 255; see also Harris County,
Regs. Sexually Oriented Bus. § V.  The Harris County Regulation prohibits, and
appellant was charged with, conducting a Class I enterprise without a valid sexually
oriented business permit.  Accordingly,
our analysis ends at the first step.  See Barbernell,
257 S.W.3d at 255 (applying two step inquiry that first considers whether term
is element of offense).  

Appellant relies on Flores
v. State to support her argument that the information did not sufficiently
allege the manner and means of the violation. 
See 33 S.W.3d 907, 919 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d). 
In Flores, the court held that
an information alleging that the appellant “unlawfully intentionally and
knowingly act[ed] as [an] entertainer” in a sexually oriented enterprise
without a permit did not set forth all of the material elements of the offense.  Id.
at 917–19.  Flores applied the City of Houston Ordinance (not the Harris County
Regulation applicable to the present case), which defined “entertainer” as
“[a]ny employee of an enterprise who performs or engages in
entertainment.”  Id. at 918.  “Entertainment”
was defined as “[a]ny act or performance . . . that involves the display or
exposure of specified sexual activities or specified anatomical areas or
engaging in any specified sexual activities whatever in the presence of
customers.”  Id.  The court justified that
the charging instrument in Flores
needed to provide the specific act the accused was alleged to have performed
that constituted “entertainment.”  Id. at 919 (holding “[t]he display of
specific sexual activities or exposure of specific anatomical areas refers to
characteristics of the act or performance that criminalize the act or
performance” and thus, are facts essential to give notice).

However, the court in Flores
expressly distinguished its holding from that in Kaczmarek, which found a charging instrument to be sufficient that
alleged the operation of a sexually oriented enterprise.  Id. n.3
(citing Kaczmarek v. State, 986
S.W.2d 287 (Tex. App.—Waco 1999, no pet.)).  The court explained that, in Kaczmarek, a manager was charged with
operating a sexually oriented enterprise that provided “entertainment,” but
because “entertainment” in the charging instrument did not involve the
defendant manager’s conduct, it need not be stated with greater
specificity.  Id.  

Here, like Kaczmarek, appellant
(a manager) is charged with operating a sexually oriented business, not
performing entertainment like in Flores.  Compare
Flores, 33 S.W.3d at 919, and Kaczmarek, 986 S.W.2d at 265.  The information in the present case tracks the
language of the regulation and specifies the type of enterprise appellant was
alleged to have been operating, namely an “adult cabaret.”   We therefore hold that appellant was
provided with sufficient notice of the charges and the trial court’s denial of
appellant’s motion to quash was appropriate. 
See Kaczmarek, 986 S.W.2d at
265.

Furthermore, even if the trial court erred by denying the
motion to quash, appellant suffered no harm because she was provided sufficient
notice of the allegations from the offense report.  See Smith,
297 S.W.3d at 267.  In fact, appellant
offered the offense report as an exhibit to her pretrial motion to quash.  Appellant argued that she used the report to
inform herself of the allegations against her and that the report only provided
sufficient notice of one theory of adult cabaret: that the entertainers were in
a “semi-nude state.”  Further, appellant
argued that she “received no notice through either the charging instrument or
the incident report” that she was charged with “conduct[ing a] business by
featuring live performances involving specified sexual activities.”  However, appellant fails to point out the
language in the very next paragraph of the offense report alleging that the
dancers performed “by grinding their buttocks in the laps of customers, which
simulated sexual acts[.]”  Because
appellant concedes that she used the report to inform herself of the
allegations against her, she was provided sufficient notice of the State’s
allegations.  

Because we conclude that the trial court did not err in denying
the motion to quash and that appellant was provided with sufficient notice of
the charges, we hold that the trial court did not abuse its discretion by
denying the motion for new trial on this issue. 
We overrule appellant’s first and second issues.

Jury Charge

In her seventh issue, appellant
argues that the trial court erred by providing the regulatory definition of
“adult cabaret” in the jury charge, which “allowed the jury to make a finding
of guilt on a theory not alleged in the information and not supported by the
evidence.”  

At the charge conference, appellant
objected to the portion of the charge that provided the definition of “adult
cabaret” as stated in the regulation. 
Trial counsel argued that parts 2 and 3 of the regulatory definition
should not be included because the State only provided notice of allegations
under part 1 of the definition and there was no evidence at trial that would
fit under parts 2 or 3.  The State agreed
that there was no evidence of part 3 and agreed to that part being deleted from
the definition in the charge.  The court
submitted a charge that included parts 1 and 2 of the regulation’s definition
of “adult cabaret.”  On appeal, appellant
argues that the court erroneously included part 2.

A.      Standard of Review

 “[A]n appellate court's first duty in
evaluating a jury charge issue is to determine whether error exists.”  Middleton
v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).  If error is found, the appellate court should
conduct a harm analysis in light of whether the error was preserved.  Id.

B.      Applicable Law

A defendant is to be tried only on
the crimes alleged in the charging instrument.  See Abdnor v. State, 871
S.W.2d 726, 738 (Tex. Crim. App. 1994). 
The jury charge must not enlarge the offense alleged and authorize the
jury to convict the defendant on a basis or theory permitted by the jury charge
but not alleged in the indictment.  See Fella v. State, 573 S.W.2d 548, 548
(Tex. Crim. App. 1978).

 “A trial court is statutorily obligated to instruct
the jury on the law applicable to the case.”  Villarreal
v. State, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); see Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon 2007).  That
statutory obligation requires that each statutory definition that affects the
meaning of an element of the offense be communicated to the jury.  Id.  

C.      Analysis

In the present case, appellant was
charged by information with intentionally and knowingly conducting a Class I
enterprise without a valid S.O.B. permit. 
The information specified that the type of S.O.B. was an adult
cabaret.  

In the charge to the jury, the trial
court provided the legal definitions from the regulation relating to the
charged offense.  The court’s charge
provided the regulatory definition of “adult cabaret,” stating in relevant
part:

“Adult Cabaret” means a nightclub, bar, restaurant, or
similar commercial establishment that features:

(1) persons who appear semi-nude or in a state of
nudity as defined in this section;  or

(2) live performances which are characterized by the
exposure of specified anatomical areas or specified sexual activities as
defined in this section[.]

 

The trial court also set forth the
following definitions of “semi-nude” and “specific sexual activities”:

“Semi-nude” means any state of dress which opaquely
covers no more than a human buttock, anus, male genitalia, female genitalia or
areola of a female breast.

 

“Specific Sexual Activities” includes any of the
following:

(1) fondling or other erotic touching of human
genitals, pubic region, buttocks, anus or female breasts, whether clothed or
nude;

(2) sex acts, actual or simulated, including
intercourse, oral copulation, or sodomy,

(3) masturbation, actual or simulated.

 

Appellant contends that the inclusion
of part 2 of the “adult cabaret” definition was erroneous for two reasons: (1)
it allowed the jury to convict her on an unpled element, and (2) the element
was not supported by the evidence.  

          Here,
the charging instrument did not allege conduct with such specificity as to
limit the offense to one particular subpart of the “adult cabaret”
definition.  Appellant cites Castillo v. State for the proposition
that the jury charge may not enlarge the alleged offense or permit the jury to
convict the defendant for a crime different from that described in the charging
instrument.  7 S.W.3d 253, 258 (Tex.
App.—Austin 1999, pet. ref’d).  The
indictment in Castillo pled with
specificity the precise way the appellant caused serious bodily injury to a
child.  Id. at 255.  Castillo explained: 

The State was not required to plead the precise way in
which appellant [committed the charged offense].  By including a more specific description, the
State undertook the burden of proving the specific allegations to obtain a
conviction.   

 

Id. (citing Bohnet v. State, 938 S.W.2d 532, 535
(Tex. App.—Austin 1997, pet. ref'd)).  Here,
the State did not provide a more specific description in the information that
would warrant narrowing the regulatory definition in the jury charge.  See
id.  Because “adult cabaret” was
defined in the regulation and that definition affected an element of the
offense, the trial court did not err in providing the jury with the definition.
 See
Villarreal, 286 S.W.3d at 329; see
also Tex. Code Crim. Proc. Ann.
art. 36.14.

          Lastly,
appellant asserts that there was no evidence presented at trial of the
activities falling under the second subpart of the “adult cabaret”
definition.  However, the record contains
ample evidence, including officers’ testimony that they observed women performing
“lap dances,” “gyrating,” “hump[ing] the stage,” “rubbing their bare breasts
near or up against customer’s faces.” 

          We
overrule appellant’s seventh issue.

Brady Evidence

In her third and fourth issues, appellant asserts that the
state failed to disclose exculpatory and impeachment evidence, as mandated by Brady v. Maryland, 373 U.S. 83, 83 S.
Ct. 1194 (1963).  

A.      Standard
of Review

An appellate court reviews a trial court’s ruling on a motion
for new trial using an abuse-of-discretion standard of review.  Webb v.
State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (addressing alleged Brady violation).  A trial court abuses its discretion in
denying a motion for new trial only when no reasonable view of the record could
support the trial court’s ruling.  Id. (citing Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).  We must uphold the trial court’s ruling if it
was within the zone of reasonable disagreement. 
Id. (citing Wead v. State, 129 S.W.3d 126, 129 (Tex.
Crim. App. 2004)).    

B.      Applicable
Law

To establish a Brady
violation, a defendant must show that: 
(1) the State suppressed evidence; (2) the suppressed evidence is
favorable to the defendant; and (3) the suppressed evidence is material.  Webb, 232
S.W.3d at 114; Harm v. State, 183 S.W.3d
403, 406 (Tex. Crim. App. 2006).  “The
defendant bears the burden of showing that, in light of all the evidence, it is
reasonably probable that the outcome of the trial would have been different had
the prosecutor made a timely disclosure.” Webb, 232 S.W.3d at 115.  “The mere possibility that an item of
undisclosed information might have helped the defense, or might have affected
the outcome of the trial, does not establish materiality in the constitutional
sense.”  Id.

C.      Analysis

Appellant argues that the State withheld Brady evidence that “would have completely undermined the State’s
case against Appellant.”  Specifically,
appellant points to a draft of an offense report on Jason Watson that refers to
him as a “manager” rather than a “floor manager,” which was not discovered by
appellant until after her trial.[2] 
Appellant asserts that this evidence “directly refuted the State’s
position that Appellant was the person who was in charge of Joy of Houston on
July 17, 2008, and who bore sole culpability, as the person principally in
charge, for Joy of Houston not having a Class I Permit.”  

However, the State did not argue that appellant was the
“sole” person responsible; rather, it was undisputed that there were two
managers on duty and both were arrested. 
Further, appellant’s argument implies that only one person can be held
responsible for violating the provision; this interpretation is in conflict
with a clear reading of the regulation. 
The regulation provides, “No person shall conduct business as either a
Class I or Class II sexually oriented business enterprise . . . without a valid
Sexually Oriented Business Permit (SOBP)[.]” 
Harris County, Regs. Sexually
Oriented Bus. § V.  “Enterprise
Operator” is defined as “a manager or other natural person principally in
charge of a Sexually Oriented Business Enterprise.”  Id. § IV(r).  The provision does not limit liability to “the manager” or only one person, as
appellant seems to argue.

Appellant cites United
States v. Bagley to argue that the evidence was indisputably
favorable.  See 473 U.S. 667, 676, 105 S. Ct. 3375 (1985).  Bagley addressed
a prosecutor’s failure to disclose evidence that the defense might have used to
impeach the Government’s witnesses by showing bias or interest (specifically, a
promise made to the key Government witness that he would not be prosecuted if
he testified for the Government).  Id. at 676–77.  The Court reversed and remanded the case to the lower court for a
determination of whether there was a reasonable probability that, had the
inducement offered by the Government to the witnesses been disclosed to the
defense, the result of the trial would have been different.  Id. at
684.  

Unlike the impeachment evidence in Bagley that revealed potential bias and prejudice, the impeachment
value of the evidence argued by appellant is to show a prior inconsistent
statement.  To qualify for admission as a
prior inconsistent statement, a defendant must demonstrate that the statements
are indeed inconsistent.  Lopez v. State, 86 S.W.3d 228, 230 (Tex.
Crim. App. 2002).  Where the proponent of
a prior statement fails to establish a threshold inconsistency between the
statement and later testimony at trial, the prior statement lacks any probative
value and is not admissible.  United States v. Hale, 422 U.S. 171,
176, 95 S. Ct. 2133 (1975).   Appellant
has not shown that the evidence would have been admissible because she has not established
the statement’s inconsistency with trial testimony. 

Even if we assume that the State suppressed favorable evidence,
appellant has not established that the evidence would have affected the outcome
of the case or deprived her of a fair trial. 
See Webb, 232 S.W.3d at 115.  Appellant was aware that Watson was a manager
and was also arrested at the same time. 
The State produced offense reports to appellant before trial documenting
that Watson said he was a manager and was arrested.  It was undisputed at trial that there were two
managers (Watson and appellant) on duty at the time of raid and both were
arrested.  Because the issue was
thoroughly covered at trial, appellant has not shown how the availability of
the offense report against Watson would have had any effect on the trial.

We hold that there is not a reasonable probability that, had
the offense report against Watson been disclosed, the result of this trial
would have been different.  See id.  Accordingly, we hold that the trial court did
not abuse its discretion in denying appellant's motion for new trial.  We overrule appellant’s third and fourth
issues.

Suppression of Appellant’s Oral
Statement

In her fifth and sixth issues, appellant argues that the
trial court erred by denying her motion to suppress her oral statements and by
finding that she was not under arrest at the time she made her oral statement.  Specifically, appellant points to an oral
statement she made when the raid team was securing the location and identifying
everyone present at the club.  Before
receiving Miranda warnings, appellant
identified herself as the manager.[3]

Despite her failure to file a written motion to suppress oral
statements, the court held a pretrial hearing on the issue.[4] 
Appellant argued she was clearly under arrest when she made the oral
statement because she “was confronted at gunpoint,” “told to sit at a table
with her hands on the table,” and was “clearly not free to leave.”  The trial court denied the motion, concluding
“it was a temporary detention for security, safety reasons.”  Appellant’s trial counsel reurged the
objection at trial, and the court overruled the objection and allowed
Montemayor to testify that appellant identified herself as “the general
manager.” 

A.      Harmless
Error

To preserve a complaint for appellate
review, a party must have presented to the trial court a timely request,
objection, or motion stating the specific legal grounds and obtained a ruling
on that objection.  Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); Layton v.
State, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).  “In addition, a party must object
each time the inadmissible evidence is offered or obtain a running objection.”  Lane v.
State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting Valle v. State, 109 S.W.3d 500, 509
(Tex. Crim. App. 2003)).  The error, if
any, in the admission of evidence becomes harmless where the same evidence
comes in elsewhere without objection.  Id. (citing Leday v. State, 983 S.W.2d 713, 718 (Tex.Crim.App.1998)); see also Reyes v. State, 84 S.W.3d 633,
638 (Tex. Crim. App. 2002) (“[A] defendant who allows evidence to be introduced
from one source without objection forfeits any subsequent complaints about the
introduction of the same evidence from another source.”).

Here, appellant’s statement that she was a manager came into
evidence from various other sources. 
Appellant identified herself as a manager when she spoke with Montemayor
several weeks prior to her arrest. 
Appellant’s trial counsel stated he had “no objections” to the admission
of appellant’s written statement, admitting that she was a manager.  Appellant testified that she directed the
entertainers on how to dress, indicating that she had control over the
management of the business. Appellant, herself, testified that she was a
manager and offered into evidence a license with her name, picture, and the
title “Manager.”  And finally, several of
the officers testified that they observed her walking around the club acting as
a manager.  Because appellant allowed the
same evidence to be introduced from other sources without objection, she has waived
any subsequent complaints about the introduction of the same evidence from
another source.  See Lane, 151 S.W.3d at 193. 
We overrule appellant’s fifth and sixth issues.

 

 

 

 

 

CONCLUSION

          We
affirm the judgment of the trial court.

 

 

 

                                                          George
C. Hanks, Jr.

                                                          Justice

 

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish.  See Tex.
R. App. P. 47.2(b).











[1]
             It
was undisputed that, because Joy of Houston was located in the unincorporated
area of Harris County, the appropriate S.O.B. permitting authority was the Harris
County Sheriff’s Office, not the City of Houston.  





[2]
             The
offense report on appellant, Kimberly Kay Benton, which was made available to
her before trial, refers to Watson as the “floor manager” and “manager”
interchangeably.  At trial, the officers described
Watson as the “floor manager” or “manager” interchangeably.  The offense report on Watson, discovered by
appellant after her trial, refers to Watson simply as “manager,” rather than
using the term “floor manager.”





[3]
Miranda v. Arizona, 384 U.S. 436, 86
S. Ct. 1602 (1966).





[4]
             Appellant
filed a written pretrial motion to suppress her “written statements,” but the
motion did not address or seek suppression of oral statements.